**AMGEN, INCORPORATED,**
**Plaintiff–Appellee,**

v.

**KIDNEY CENTER OF DELAWARE COUNTY, LIMITED, Defendant–Appellant.**

No. 95–1988.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1995.

Decided Sept. 6, 1996.

William J. Harte (argued), Joseph E. Tighe, Richard J. Prendergast, Richard J. Prendergast, Ltd., Chicago, IL, William M. Shields, Monteverde & Hemphill, Philadelphia, PA, Gerald T. McLaughlin, Cooley, Godward, Castro, Huddleson & Tatum, Palo Alto, CA, for plaintiff–appellee.

Jeffrey D. Colman, Jenner & Block, Chicago, IL, Michael G. Tierce (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for defendant–appellant.

---

\* The Hon. Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

Before LAY,\* CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Through the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, Congress has adopted a policy favoring arbitration as a means of resolving certain contractual disputes. The FAA creates a body of substantive law that regulates arbitration agreements involving interstate commerce or maritime transactions, and this law generally attempts to make arbitration agreements easier to enforce and arbitration proceedings easier to administer. Towards these ends, it authorizes the federal courts to enforce the arbitration agreements to which it applies. In addition, it creates some elementary procedural rules to facilitate the conduct of arbitrations. First, it gives arbitrators broad authority to order the collection of evidence relevant to the arbitration. Although it does not give the arbitrators themselves any power to enforce these orders, it does give the district courts authority to compel compliance with them. This case raises questions about the authority created by these two procedural rules. The parties here disagree about the extent of an arbitrator's authority to summon witnesses to participate in prehearing discovery, and they dispute the extent of the federal courts' authority to enforce these summonses. Before we can decide these issues, however, we must address problems relevant to our own jurisdiction and the jurisdiction of the district court.

## I.

Amgen, Inc. has a patent for erythropoietin, something that it describes as a "genetically engineered health care product." In 1985, Amgen and Ortho Pharmaceutical Corp. entered into an agreement by which Ortho acquired a limited license for the use of erythropoietin. This license did not include the right to use and sell erythropoietin for use by patients receiving kidney dialysis therapy, a right that Amgen retained. The

licensing agreement provided that the parties would arbitrate any dispute pertaining to the agreement and that the arbitration would take place in Chicago, Illinois. Such a dispute arose in 1989, and Amgen and Ortho agreed that Frank J. McGarr, former Chief Judge of the United States District Court for the Northern District of Illinois, would preside over the arbitration. During the course of the arbitration, the arbitrator determined that he required evidence from several parties who were unconnected with the contract between Amgen and Ortho. One of those parties was the Kidney Center of Delaware County (KCDC), which provides dialysis services and apparently purchases a great deal of erythropoietin. The arbitrator issued a summons to KCDC, ordering it to appear at a deposition in Pennsylvania and to produce relevant documents. KCDC refused to comply with the summons.

Seeking to compel KCDC's compliance, Amgen filed a petition (styled as a motion) in the district court for the Eastern District of Pennsylvania under § 7 of the FAA. That section authorizes the federal district courts to confirm the authority underlying an arbitrator's summons and to compel compliance with such a summons. The Pennsylvania court pointed out that § 7 gives this authority only to the district court for the district in which the arbitrator sits. Because Judge McGarr was sitting in Chicago, the Pennsylvania court concluded that it had no authority either to confirm the authority behind the summons or to enforce it; but it did note that a district court for the Northern District of Illinois could issue the order that Amgen sought. Hence it sent its case file to Chicago and gave Amgen leave to refile its petition there.

Amgen followed this procedure, submitting the same petition in the Northern District of Illinois that it had submitted in Pennsylvania. The district court here issued an order in which it confirmed that the arbitrator had the authority to elicit evidence from KCDC. In that same order, however, the district court noted that compelling compliance with the arbitrator's summons would be complicated because it could not simply issue its own subpoena to KCDC. Federal Rule of Civil Procedure 45(a)(2) provides that a subpoena commanding document production or attendance at a deposition shall issue from the district court for the district in which the document production or deposition will occur. Thus, only a district court in the Eastern District of Pennsylvania could issue a subpoena to KCDC. Nevertheless, the district court also decided that Federal Rule of Civil Procedure 45(a)(3)(B) presented a way around this problem. Rule 45(a)(3)(B) creates a mechanism by which a court in one federal district can obtain deposition testimony and document production in a different district. Through this mechanism, an attorney who is authorized to practice in the district court that seeks discovery may issue a subpoena on behalf of a court in the district where the deposition and document production will take place. The district court here sought to activate this mechanism and directed an attorney for Amgen to issue a subpoena to KCDC on behalf of the district court for the Eastern District of Pennsylvania. The Illinois district court retained jurisdiction over the case to supervise KCDC's compliance with the subpoena. *See Amgen, Inc. v. Kidney Ctr. of Delaware Cty., Ltd.*, 879 F.Supp. 878 (N.D.Ill.1995).

Before Amgen's attorney could issue the subpoena, KCDC appealed the Illinois district court's order to us. It argued that the arbitrator did not have the authority under the FAA to issue a summons calling for discovery from a distant party unconnected with the contract that was at issue in the arbitration; it therefore contended that the district court erred in confirming that authority. KCDC also insisted that the order by the district court here was improper because it did not actually compel compliance with the summons. As KCDC understands the order, it only describes a method by which another court may compel compliance with the summons. Therefore, KCDC believes that the order here was the equivalent of an advisory opinion, which is improper under Article III of the Constitution.

## II.

■ We must first determine whether we have jurisdiction to review the district court's

order. The parties have addressed the question of our jurisdiction with respect to 28 U.S.C. § 1291, which gives the courts of appeal jurisdiction over most final decisions of the district courts. Because they have not discovered any cases addressing questions of appellate jurisdiction of orders issued under § 7 of the FAA, they try to find analogies for the order in question here. They therefore discuss the general principles of finality under § 1291, and they also discuss such matters as the finality of a district court's discovery orders to nonparties, the finality of a district court's orders enforcing subpoenas by administrative agencies, and the collateral order doctrine.

These arguments are, unfortunately, beside the point because Amgen and KCDC have overlooked the statute that directly determines our jurisdiction over appeals from orders issued under the FAA—9 U.S.C. § 16. The most widely used provisions of § 16 permit an immediate appeal from orders that give litigation precedence over arbitration and deny an immediate appeal from orders that give arbitration precedence over litigation.[1] See Perera v. Siegel Trading Co., Inc., 951 F.2d 780, 783 (7th Cir.1992); see also 15B Charles A. Wright, et al., Federal Practice & Procedure § 3914.17 (1992). In addition, § 16 also includes a provision that affects orders issued under the FAA when the arbitration has nothing to do with any litigation. This is the provision that matters here. It permits an immediate appeal from "a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(3). We can therefore hear KCDC's appeal if the order here is a "final decision with respect to an arbitration."

As commentators have recently noted, the meaning of "final decision" under § 16 is somewhat uncertain. 15B Federal Practice & Procedure at § 3914.17. Before the enactment of § 16 in 1988, the federal courts relied on the principles relevant to § 1291 to determine when an order respecting arbitration was final and appealable. Through the application of these principles, they developed a reasonably comprehensive definition of "final decision" in the context of FAA cases. Id. But § 16 flatly contradicted some aspects of that definition. For example, until 1988, an order compelling arbitration under § 4 was considered to be a final decision. See University Life Ins. Co. of America v. Unimarc, Ltd., 699 F.2d 846, 848–49 (7th Cir.1983). Now, of course, such an order is not an appealable final decision under § 16, specifically because of the provisions of § 16(b). Consequently, we cannot rely entirely on the earlier definition of "final decision" in connection with orders respecting arbitration. Nevertheless, the old understanding of "final decision" still guides our inquiry to a great extent. Perera, 951 F.2d at 784–85; see also 15B Federal Practice & Procedure at § 3914.17.

When a district court issues an order under the FAA, the procedural context from which that order emerges determines whether it is final. A district court can apply the FAA in either of two procedural contexts. The first arises when a party comes to federal court for the sole purpose of asking the court to issue an order authorized by the FAA. For example, the party could petition

---

1. In its entirety, § 16 provides that:
   (a) An appeal may be taken from—
     (1) an order—
       (A) refusing a stay of any action under section 3 of this title,
       (B) denying a petition under section 4 of this title to order arbitration to proceed,
       (C) denying an application under section 206 of this title to compel arbitration,
       (D) confirming or denying confirmation of an award or partial award, or
       (E) modifying, correcting or vacating an award,
     (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

   (3) a final decision with respect to an arbitration that is subject to this title.
   (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
     (1) granting a stay of any action under section 3 of this title;
     (2) directing arbitration to proceed under section 4 of this title;
     (3) compelling arbitration under section 206 of this title; or
     (4) refusing to enjoin an arbitration that is subject to this title.

the court to enforce an arbitration agreement and compel arbitration under § 4; or the party could invoke § 7 of the FAA and petition for an order compelling compliance with an arbitrator's summons in an ongoing arbitration. The district court proceedings involving these petitions are generally known as "independent proceedings." *See S+L+H S.p.A. v. Miller–St. Nazianz, Inc.,* 988 F.2d 1518, 1523 (7th Cir.1993). But petitions for relief under §§ 4 and 7 may arise in the midst of ongoing litigation in the district court. When two parties are litigating a complicated dispute, and when some of the issues in that dispute are arbitrable, the parties may petition the court to order arbitration for those issues. Once the court orders arbitration, it may, of course, also order compliance with summonses from the arbitrator. The proceedings dealing with orders issued in these circumstances are known as "embedded proceedings." *See Massey Ferguson Div. of Varity Corp. v. Gurley,* 51 F.3d 102, 105 (7th Cir.1995).

As a general rule, we have held that most orders issued in independent proceedings are final and appealable for the purposes of § 16(a)(3) of the FAA. *See Yasuda Fire & Marine Ins. Co. of Europe, Ltd. v. Continental Casualty Co.,* 37 F.3d 345, 348–49 (7th Cir.1994); *S+L+H S.p.A.,* 988 F.2d at 1522–23; *Perera,* 951 F.2d at 785. This rule emerges from the principles that helped define "finality" before the enactment of § 16. Some of those principles are expressed in the idea of "practical finality," which is an important concept in the determination of appellate jurisdiction of orders respecting arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 10, 103 S.Ct. 927, 933–34, 74 L.Ed.2d 765 (1983). When a district court's order disposes of all of the issues that are before it, the order is usually considered to be final. *See Yasuda,* 37 F.3d at 348–49. This is the nature of orders issued in independent proceedings. Other principles that were important before the enactment of § 16 confirm this characterization of orders in independent proceedings. These are the same principles that inform the rule prohibiting the appeal of most interlocutory orders. An order issued in an embedded proceeding is roughly equivalent to an interlocutory order issued in litigation. As we have noted, an embedded proceeding is a constituent part of a more comprehensive litigation; the orders issued in an embedded proceeding do not have final effect and are therefore not reviewable until the entry of a final judgment in the superintending litigation. By contrast, the legal consequences of an order issued in an independent proceeding do not depend upon the pending entry of judgment. The effect of the order is clear once it is issued; and an appellate court can review the order at that point.

Nothing in § 16 changes the fundamental relevance of these well-established principles. We have held that § 16 does not create a new definition of "final decision" for the purpose of determining the appealability of orders respecting arbitration. *Perera,* 951 F.2d at 783–84. Instead, it creates specific exceptions to the established definition of finality. *Id.* It prohibits an immediate appeal from two kinds of orders issued in independent proceedings—those compelling arbitration and those refusing to enjoin arbitration. 9 U.S.C. §§ 16(b)(2) & 16(b)(4). But pre-sec. 16 principles still apply to all cases not coming within one of these exceptions expressed in § 16. *See Perera,* 951 F.2d at 783–84.

■ Moreover, an order in an independent proceeding can still be final even if the district court retains jurisdiction over the case to supervise compliance with the order. In *University Life,* a pre-sec. 16 case, we held that the parties to an independent proceeding conducted under 9 U.S.C. § 4 could appeal an order compelling arbitration, even when the district court retained jurisdiction to supervise compliance with the order. 699 F.2d at 848–49. As we noted above, § 16 of the FAA effectively overrules one part of this holding by providing that an order compelling arbitration under § 4 is not immediately appealable. The enactment of § 16 does not, however, disturb the other part of the holding, the one on which we rely here. Regardless of § 16, *University Life* still stands for the proposition that an order respecting an independent arbitration proceeding that is otherwise final does not lose its finality because the district court retains jurisdiction to supervise compliance with the order. In

light of these principles, we conclude that the order in question here is final and appealable for the purposes of § 16(a)(3). The district court issued the order in an independent proceeding; Ortho and Amgen are not litigating any issues in their licensing dispute in the district court. When the district court confirmed the arbitrator's authority to issue the summons and when it identified a mechanism to compel compliance with that summons, it disposed of all of the issues before it, and it provided the sole relief requested, even though it did retain jurisdiction over the case. The order is, therefore, within our jurisdiction.

### III.

■ This case also raises another jurisdictional problem, one involving the subject matter jurisdiction of the district court. Neither Amgen nor KCDC has directly addressed any question about subject matter jurisdiction in the district court, although KCDC has adverted to it in the jurisdictional statement in its appellate brief.[2] Despite the absence of full briefing and argument, we must consider this issue. *Yasuda*, 37 F.3d at 347.

As the Supreme Court has suggested, subject matter jurisdiction under the FAA can pose problems because the statute "is something of an anomaly in the field of federal-court jurisdiction." *Moses H. Cone*, 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32. When a district court exercises the authority created by the FAA in an embedded proceeding, no difficulties with subject matter jurisdiction arise. Because the embedded proceeding is contained within litigation for which subject matter jurisdiction is established, the district court faces no questions about its jurisdiction to issue orders concerning the arbitration. But problems of subject matter jurisdiction can be presented by independent proceedings. In discussing independent proceedings

arising under § 4, the Supreme Court has noted that the FAA

> creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. V) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

*Id.* This interpretation of the FAA establishes that the statute itself does not create subject matter jurisdiction for independent proceedings, whether they involve § 4 or § 7. *See Sharp Electronics Corp. v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir.1991). When a party to an arbitration initiates an independent proceeding, it must establish that the dispute that underlies the arbitration would come within the jurisdiction of the district court.

Amgen has not yet done so, either directly or indirectly. Its petition to the district court says nothing about whether the court would have subject matter jurisdiction of its dispute with Ortho, and neither KCDC nor the district court noticed this omission while the case was pending below. We could overlook this deficiency if the record conclusively revealed the facts necessary to finding subject matter jurisdiction, but it does not. See *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530 (7th Cir.1985). Nothing in the record reveals whether the conflict between Amgen and Ortho raises a federal question. The record does *suggest* that this conflict may fall within the district court's diversity jurisdiction, but the record is not clear on this matter. The district court would have jurisdiction of the dispute between Amgen and

---

**2.** By arguing that the district court's order here is the equivalent of an advisory opinion, KCDC implicitly raises a jurisdictional issue that differs from the one we discuss infra. Under Article III of the Constitution, the district courts never have jurisdiction to issue advisory opinions; thus any argument that a court has issued an advisory opinion is, in a sense, an argument that it has

acted without jurisdiction. But KCDC does not frame its argument about the nature of the district court's order in strictly jurisdictional terms. As KCDC presents this argument, it really pertains to the merits of the case. We will therefore consider this argument if it is appropriate for us to reach the merits.

Ortho if they had diverse citizenship and if the amount in controversy exceeded $50,000. *See* 28 U.S.C. § 1332. A corporation is considered to be a citizen of the state of its incorporation and the state in which it has its principal place of business. A copy of the licensing agreement is in the record, and it indicates that Amgen and Ortho are incorporated in different states. But it contains no information about the locations of their principal places of business, and, as a result, we cannot conclusively determine their citizenship. The licensing agreement also suggests that their contractual relationship involves millions of dollars; hence we suspect that their controversy is worth more than $50,000. But, once again, we cannot be certain that it is. This uncertainty prevents us from establishing the necessary jurisdictional facts on the basis of our own inspection of the record.

The uncertainty of these fundamental factual issues would ordinarily require us to remand the case to the district court with an order to dismiss the petition. Our usual course of action seems inadvisable here, however, because it disserves the interests of both parties and because it is not likely to accomplish any important purpose. Amgen came to the district court to expedite the progress of its arbitration and now finds itself in the kind of procedural tangle that arbitration purports to avoid—although its own oversight is a significant reason for this situation. KCDC seeks to be left out of the arbitration and its attendant disputes altogether, but, if we order the dismissal of Amgen's petition, KCDC's involvement in the case will only drag on. Nothing prevents Amgen from submitting a new petition to the district court with proper jurisdictional allegations. If jurisdiction exists, the district court would, of course, go on to decide the merits of the petition, and we presume that the district court would adhere to its current view and that KCDC and Amgen would pursue an appeal in essentially the same way that they do now. It is quite likely, therefore, that an immediate dismissal will not erase or alter the questions now presented to us, and we expect that following our usual course would only effect a substantial delay in our consideration of the same arguments

on the merits that are before us at the moment.

Although we cannot avoid some delay in our consideration of the merits, we can employ a method of procedure that will shorten this delay and make the proceedings in this case more efficient. In *Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 768 F.2d 189 (7th Cir.1985), we faced a procedural situation quite similar to the one here, and we ordered the district court to make and certify a finding of jurisdictional facts within a brief time period while we retained jurisdiction of the case. We explained this somewhat unorthodox maneuver this way:

> Although the filing of the notice of appeal normally divests the district court of jurisdiction over a case, the reason for the rule provides guidance to its scope. The reason is to prevent the duplication of effort and the confusion that would be created if two courts simultaneously had jurisdiction over the same case, and is inapplicable when the court of appeals suspends its consideration of the case to allow the district court to conduct a limited proceeding that may enable the appeal to be terminated. In such a case, the court of appeals has the power to direct further proceedings by the district court while retaining jurisdiction of the appeal, even though the result is that both courts have for a short time simultaneous jurisdiction—the court of appeals', however, being nominal.

768 F.2d at 190–91; *see also Sarnoff v. American Home Prods. Corp.*, 798 F.2d 1075, 1079 (7th Cir.1986). After the parties resolved their jurisdictional problems before the district court, we resumed our consideration of the case and ruled on the merits. *Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 774 F.2d 214 (7th Cir.1985).

Because we think that it is relatively easy to determine the jurisdictional questions here, we will follow this procedure. We direct the district court to make and certify to us, within sixty days, its findings on subject matter jurisdiction. When we receive those

findings, we will either order the dismissal of the case or rule on the merits of the appeal.

REMANDED WITH INSTRUCTIONS.