**DYNEGY MIDSTREAM SERVICES, LP, also known as DMS, Petitioner–Appellant,**

v.

**TRAMMOCHEM, Division of Transammonia, Inc., A.P. Moller (Maersk Gas Carriers) and Igloo Shipping, a/s, Respondents–Appellees.**

Docket No. 05–3544–CV.

United States Court of Appeals, Second Circuit.

Argued: Dec. 15, 2005.

Decided: June 13, 2006.

Bradley L. Deluca, Johnson Deluca Kennedy & Kurisky, P.C., (Susan L. Read, Johnson Deluca Kennedy & Kurisky, P.C., Peter A. Cross, Hugh Zuber, Jacob Medinger & Finnegan, LLP on the brief) Houston, TX, for Petitioner–Appellant.

Christopher H. Mansuy, DeOrchis & Partners, LLP, (Lili F. Beneda on the brief) New York, NY, for Respondents–Appellees.

Before POOLER, KATZMANN, and B.D. PARKER, Circuit Judges.

POOLER, Circuit Judge.

Respondents-appellees are parties to an arbitration in New York. The arbitrators in that dispute issued a subpoena directing petitioner-appellant to produce documents and electronic data. Petitioner chose to ignore the subpoena, and respondents filed a motion to compel compliance in the United States District Court for the Southern

District of New York (Baer, J.). The district court granted the motion to compel, over petitioner's objection that the court lacked personal jurisdiction over it. Petitioner filed a timely notice of appeal.

We hold, as an initial matter, that where an order compelling compliance with an arbitrator's subpoena disposes of the entire case, it is a final order for the purposes of appellate jurisdiction. In addition, we hold that the Federal Arbitration Act does not authorize nationwide service of process and therefore the district court lacked personal jurisdiction over appellant. Because we lack personal jurisdiction, we find it unnecessary to address whether the Federal Arbitration Act authorizes the issuance of documents-only subpoenas to third parties.

## BACKGROUND

■ Respondent-appellee Trammochem chartered a vessel from respondents-appellees A.P. Moller (Maersk Gas Carriers) and Igloo Shipping, A/S ("the vessel owners") to transport cargo from Houston, Texas to Antwerp, Belgium. The charter party[1] contained an arbitration clause, which required arbitration to take place in New York City. The vessel owners hired Inert Gas Systems, Inc. to perform services on the vessel in Houston in preparation for use by Trammochem, and Inert Gas Systems, Inc. engaged appellant-petitioner Dynegy Midstream Services ("DMS") to provide certain facilities and supplies. After the cargo arrived in Belgium, a dispute arose between Trammochem and the vessel owners because the cargo had become contaminated, possibly while the vessel was in Houston. Pursuant to the charter party, this dispute was submitted to arbitration.

A report prepared by Captain Bert Desmet, a member of the nautical Commission to the Commercial Court at Antwerp, concluded that the most likely cause of the contamination was DMS's shore-flare system. On November 12, 2004, A.P. Moller attempted to vouch[2] DMS into the arbitration, demanding that DMS defend and indemnify it. DMS refused to participate in the arbitration. DMS contends this was because it did not have sufficient time to prepare to participate in the arbitration, and it decided it would be preferable strategically to attempt to limit the extent to which it would be bound by the arbitration.

On February 9, 2005, the arbitrators issued a subpoena requiring DMS to produce documents related to DMS's shore-flare system at an office in Houston at 10 a.m. on March 11, 2005. This subpoena was served on DMS's registered agent in Houston on February 16, 2005. DMS refused to comply, apparently again because of concern about the preclusive impact of any participation in the arbitration. Respondents filed a motion to compel in the Southern District of New York. It is undisputed that DMS has no contacts with New York. DMS argued that the district court did not have personal jurisdiction over it. The district court disagreed, and ordered DMS to comply with the subpoena.

## DISCUSSION

This case raises jurisdictional issues connected to the subpoena power of arbitra-

---

1. "A 'charter party' is a contract by which a ship or part thereof is leased to a merchant." *Continental Ins. Co. v. Polish S.S. Co.,* 346 F.3d 281, 282 n. 2 (2d Cir.2003).

2. "Vouching In" is a common law procedure, similar to impleader, providing an opportunity for a defendant to invite an indemnitor to participate in the litigation or potentially be precluded from relitigating the issues decided in it. See *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 386 (2d Cir.2003).

tors under the Federal Arbitration Act ("FAA"). Section 7 of the FAA empowers arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. Such a summons must be "served in the same manner as subpoenas to appear and testify before the court" and may be enforced by the "district court for the district in which such arbitrators, or a majority of them, are sitting." *Id.* Section 16 of the FAA provides for appeal from "a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(3).

### I. Appellate Jurisdiction

Although neither party contests appellate jurisdiction in this case, we have an independent duty to determine whether such jurisdiction exists. *See Arnold v. Lucks,* 392 F.3d 512, 517 (2d Cir.2004) ("[E]very federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction ...." (internal quotation marks omitted)); *Henrietta D. v. Giuliani,* 246 F.3d 176, 179 (2d Cir.2001) (noting obligation to raise issue of jurisdiction sua sponte where it is questionable). A recent decision of our Court questioned, without deciding, whether an order compelling compliance with an arbitrator's subpoena is a final order for the purposes of appellate jurisdiction. *See Stolt–Nielsen SA v. Celanese AG,* 430 F.3d 567, 573–75 (2d Cir.2005). We hold that where, as here, an order compelling compliance disposes of all issues before the district court, it is a final order and immediately appealable.

Because FAA Section 16 allows appeal from "a final decision with respect to an arbitration that is subject to this title," we must decide whether the district court's order compelling compliance with the subpoena is a final decision within the meaning of this section. 9 U.S.C. § 16(a)(3). The Supreme Court has interpreted this section according to the "well-developed and longstanding meaning" of "final decision." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). A final decision "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.* (quoting, inter alia, *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994)).

"Under traditional finality principles, a district court's decision to compel compliance with a subpoena or to deny a motion to quash a subpoena is generally not a 'final decision' and therefore is not immediately appealable." *Stolt–Nielsen,* 430 F.3d at 574. "To obtain appellate review, the subpoenaed party must defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final...." *United States v. Constr. Prods. Research, Inc.,* 73 F.3d 464, 469 (2d Cir. 1996) (citing, inter alia, *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971)). The same rule applies where the witness is a non-party. *Dove v. Atl. Capital Corp.,* 963 F.2d 15, 17 (2d Cir.1992) (citing *Alexander v. United States,* 201 U.S. 117, 122, 26 S.Ct. 356, 50 L.Ed. 686 (1906)). The purpose of this rule is to prevent the temporary halt of the litigation process that would be required by an appeal from an order enforcing a subpoena. *See Constr. Prods. Research,* 73 F.3d at 469 (citing *Reich v. Nat'l Eng'g & Contracting Corp.,* 13 F.3d 93, 95 (4th Cir.1993)).

Although this rule applies in civil, criminal, and grand jury proceedings, a different rule applies to the enforcement of

agency subpoenas, which " 'may be appealed immediately without first performing the ritual of obtaining a contempt order.' " *Stolt–Nielsen,* 430 F.3d at 574 (quoting *Constr. Prods. Research,* 73 F.3d at 469). This is because "at least from the district court's perspective, the court's enforcement of an agency subpoena arises out of a proceeding that may be deemed self-contained, so far as the judiciary is concerned.... [T]here is not ... any further judicial inquiry which would be halted were the offending [subpoenaed party] permitted to appeal." *Id.* at 574–75 (internal quotations marks omitted).

 In *Stolt–Nielsen* we noted certain interests that might favor requiring a party to be held in contempt before appealing. *Id.* at 575. Section 7 of the FAA permits a district court to punish failure to comply with an arbitrator's subpoena "for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States," 9 U.S.C. § 7, potentially suggesting that the general rule for challenging court subpoenas would apply. *Stolt–Nielsen,* 430 F.3d at 575. In addition, "courts have a well-recognized interest in preventing arbitrations from being slowed down by, or burdened by the expense of, piecemeal appeals of every subpoena issued by an arbitration panel." *Id.* (citing *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 90 (2d Cir. 2005)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.").

However, the extent to which arbitration would be delayed by appeals of orders enforcing subpoenas is unclear. In this case, the parties agreed at oral argument that the arbitration between Trammochem and the vessel owners has proceeded, despite DMS's refusal to participate, while this appeal has been pending. In addition, the reference to the district court's contempt powers in Section 7 does not set up a two-stage proceeding, where the district court first enforces an arbitration panel's subpoena and then has to issue a contempt order for non-compliance. The language suggests, rather, that the district court has two simultaneous options instead of two sequential steps: the district court "may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." 9 U.S.C. § 7. Section 7 does not say that the district court may *first* compel attendance, and may *then* punish for contempt. Finally, we accept what *Stolt–Nielsen* raised as a possibility: that structurally "enforcement of an arbitration subpoena presents a situation closer to that of an administrative agency subpoena than enforcement of a subpoena in a[n] ordinary civil or criminal proceeding." *Stolt–Nielsen,* 430 F.3d at 575.

Thus, overall, we find the arbitration subpoena at issue here to be more akin to an administrative subpoena. The litigation to enforce the subpoena is an entirely self-contained court proceeding, and the court's order compelling compliance completely disposed of the case, leaving nothing more for the court to do but enforce the judgment.

 The Seventh Circuit, the only other circuit to address this issue directly,[3] has

found that there is appellate jurisdiction over an order to enforce an arbitrator's subpoena where the proceeding is "independent" rather than "embedded." See *Amgen, Inc. v. Kidney Ctr. of Del. County, Ltd.*, 95 F.3d 562, 565–67 (7th Cir.1996). A proceeding is independent "when a party comes to federal court for the sole purpose of asking the court to issue an order authorized by the FAA," and embedded when the order "arise[s] in the midst of ongoing litigation in the district court." *Id.* at 565–66. Although the Supreme Court in *Green Tree* called into question the independent-embedded distinction, the Court's reliance on traditional notions of finality suggests that an order in any independent proceeding, which by definition disposes of all the claims before the court, would still be a final order under FAA Section 16. See *Green Tree*, 531 U.S. at 88–89, 121 S.Ct. 513; *Stolt–Nielsen*, 430 F.3d at 573–74.

■ In this case, the district court's order clearly "end[ed] the litigation on the merits and [left] nothing more for the court to do but execute the judgment." *Green Tree*, 531 U.S. at 86, 121 S.Ct. 513 (internal quotation marks omitted). The court's order granted the motion to compel and instructed the clerk of the court to close the case and remove it from the docket. We therefore conclude that, where the order compelling compliance with a subpoena disposes of all issues in the case, that order is a final order, and we have appellate jurisdiction to review it.

## II. Personal Jurisdiction

■ We review a district court's assertion of personal jurisdiction de novo. *See PDK Labs, Inc. v. Friedlander*, 103

F.3d 1105, 1108 (2d Cir.1997). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Appellees contend that FAA Section 7 authorizes nationwide service of process. We cannot agree. We therefore hold that the district court lacked personal jurisdiction over DMS to enforce the subpoena.

FAA Section 7 states that an arbitrator's summons "shall be served in the same manner as subpoenas to appear and testify before the court." 9 U.S.C. § 7. Section 7 also provides that the district court in the district in which the arbitrators are sitting may enforce such a summons by compelling attendance or punishing a non-attendee for contempt "in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." *Id.* Service of subpoenas to appear before the federal courts and enforcement of those subpoenas are in turn governed by Federal Rule of Civil Procedure 45. Rule 45(b)(2) permits a subpoena to be

served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.

---

3. Other circuits have assumed jurisdiction in these circumstances without addressing the issue. *See Hay Group, Inc. v. E.B.S. Acquisi-* *tion Corp.*, 360 F.3d 404, 406 (3d Cir.2004); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir.1999).

Fed.R.Civ.P. 45(b)(2). This is the default rule; however, "[w]hen a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place." *Id.* Not only is service of process geographically limited by Rule 45, but enforcement proceedings are too. Rule 45(e) further provides that failure to comply with a properly issued subpoena "may be deemed a contempt of the court from which the subpoena issued." Fed. R.Civ.P. 45(e). Ordinarily, in the case of a subpoena for the production of documents alone, that court would be "the court for the district where the production or inspection is to be made." Fed.R.Civ.P. 45(a)(2). Rule 37(a)(1) similarly provides that "[a]n application for an order [to compel discovery] to a person who is not a party shall be made to the court in the district where discovery is being, or is to be, taken." Fed.R.Civ.P. 37(a)(1). Thus, the Federal Rules governing subpoenas to which Section 7 refers do not contemplate nationwide service of process or enforcement; instead, both service and enforcement proceedings have clear territorial limitations.

In this case, the subpoena was issued not by a court, but by the arbitrators. It required DMS to produce documents in Houston and was served on DMS in Houston, presumably within 100 miles of where production was to take place. Ordinarily, under Rule 45, such a subpoena would be issued by the District Court for the Southern District of Texas and could be enforced by that court. However, FAA Section 7 provides that subpoenas issued under that section may be enforced by petition to "the United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9

U.S.C. § 7. Here, the arbitrators were sitting in the Southern District of New York, so FAA Section 7 required that any enforcement action be brought there.

Appellees contend, and the district court found, that the foregoing analysis implies that the Southern District of New York must have jurisdiction over DMS to enforce the subpoena. However, the federal district courts do not generally have nationwide jurisdiction unless authorized by a federal statute.[4] See *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir.2004) ("[W]here the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process."). Contrary to the district court's reading of the statute, nothing in the language of FAA Section 7 suggests that Congress intended to authorize nationwide service of process. In fact, the language of Section 7 specifically suggests that the ordinary rules applicable to the district courts apply by stating that subpoenas under the section "shall be served in the *same manner* as subpoenas to appear and testify before the court" and the district court may compel attendance "in the *same manner provided by law* for securing the attendance of witnesses ... in the courts of the United States." 9 U.S.C. § 7 (emphasis added).

"Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress failed to do so here argues forcefully that such authorization was not its intention." *Omni Capital,* 484 U.S. at 106, 108 S.Ct. 404. For example, when Congress intends to permit nationwide personal jurisdiction it uses language permitting service "wherever the defendant may be found" or "any-

---

4. Thus, it was erroneous for the district court to assume that nationwide jurisdiction existed because Congress had not expressly prohibited it.

where in the United States." *Id.* at 105–06, 108 S.Ct. 404 (internal quotation marks omitted); *see also* 29 U.S.C. § 1451(d) ("[P]rocess may be served in any district where a defendant resides, does business, or may be found."); 15 U.S.C. § 78aa ("[P]rocess in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."). The language from FAA Section 7 cited above stands in marked contrast to these statutes. We therefore hold that FAA Section 7 does not authorize nationwide service of process, and the district court therefore erred in asserting personal jurisdiction over DMS.

Appellees argue that this holding will create the absurd result that FAA Section 7 authorizes the issuance of some subpoenas that cannot be enforced. They ask us either to adopt the compromise position created in *Amgen, Inc. v. Kidney Center of Delaware County*, 879 F.Supp. 878, 882–83 (N.D.Ill.1995), where the district court enforced an arbitration subpoena against a distant non-party by permitting an attorney for a party to the arbitration to issue a subpoena that would be enforced by the district court in the district where the non-party resided, or to suggest another method to get around this gap in enforceability. We decline to do so. We see no textual basis in the FAA for the *Amgen* compromise. Indeed, we have already held that Section 7 "explicitly confers authority only upon *arbitrators;* by necessary implication, the *parties* to an arbitration may not employ this provision to subpoena documents or witnesses." *NBC v. Bear Stearns & Co.*, 165 F.3d 184, 187 (2d Cir. 1999). Moreover, we see no reason to come up with an alternate method to close a gap that may reflect an intentional choice on the part of Congress, which could well have desired to limit the issuance and enforcement of arbitration subpoenas in order to protect non-parties from having to participate in an arbitration to a greater extent than they would if the dispute had been filed in a court of law. The parties to the arbitration here chose to arbitrate in New York even though the underlying contract and all of the activities giving rise to the arbitration had nothing to do with New York; they could easily have chosen to arbitrate in Texas, where DMS would have been subject to an arbitration subpoena and a Texas district court's enforcement of it. Having made one choice for their own convenience, the parties should not be permitted to stretch the law beyond the text of Section 7 and Rule 45 to inconvenience witnesses. As we have recently stated, "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir.2004) (citations, internal quotation marks, and emphasis omitted). DMS is not a party to the contract, and not even the strong federal policy favoring arbitration can lead to jurisdiction over a non-party without some basis in federal law.

Because we have no personal jurisdiction over DMS, we do not address the question of whether Section 7 permits documents-only subpoenas of the type issued here. *See Stolt–Nielsen*, 430 F.3d at 569; *NBC*, 165 F.3d at 188.

## CONCLUSION

Accordingly, for the reasons set forth above, we reverse the decision of the district court ordering compliance with the arbitrator's subpoena and remand for the district court to enter judgment consistent with this opinion.