**07-1197-cv**
**Life Receivables Trust v. Syndicate 102 at Lloyd's of London**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: October 23, 2008                    Decided: November 25, 2008)

Docket No. 07-1197-cv

_____

LIFE RECEIVABLES TRUST,

*Claimant*,

LIFE SETTLEMENTS CORPORATION, doing business as Peachtree Life Settlements,

*Movant-Appellant*,

- v. -

SYNDICATE 102 AT LLOYD'S OF LONDON,

*Respondent-Appellee.*

_____

Before:
          WESLEY and HALL, *Circuit Judges*, and OBERDORFER, *District Judge*.[1]

        Appeal from an order of the United States District Court for the Southern District of New York (Owen, J.) enforcing an arbitral subpoena under section 7 of the Federal Arbitration Act, 9 U.S.C. § 7. We reverse, holding that section 7 does not authorize an arbitrator to compel pre-hearing document discovery from non-parties to the arbitration.

_____

[1] The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

JESÚS E. CUZA, (Jeffrey B. Sklaroff, Greenberg Traurig, LLP, New York, NY, Elliot H. Scherker, Greenberg Traurig, P.A., Miami, FL, *on the brief*), Greenberg Traurig, P.A., Fort Lauderdale, FL, *for Appellant*.

EVAN L. SMOAK, (R. Steven Anderson, Michael D. Haupt, Alison J. Shilling, *of counsel*), Barger & Wolen LLP, New York, NY, *for Appellee*.

WESLEY, *Circuit Judge*:

This appeal places squarely before us a question that has divided the circuits:[2] Does section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7, authorize arbitrators to compel pre-hearing document discovery from entities not parties to the arbitration proceeding? The Eighth Circuit has held that it does, *see In re Arbitration Between Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870-71 (8th Cir. 2000); the Third Circuit has determined that it does not, *see Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3d Cir. 2004); and the Fourth Circuit has concluded that it may – where there is a special need for the documents, *see Comsat Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275 (4th Cir. 1999). Like the Third Circuit, we hold that section 7 does not enable arbitrators to issue pre-hearing document subpoenas to entities not parties to the arbitration proceeding, and therefore reverse the order of the United States District Court for the Southern District of New York (Owen, J.).

---

[2] We have twice deferred decision on this issue. *See Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 569 (2d Cir. 2005); *Nat'l Broadcasting Co. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 187-88 (2d Cir. 1999).

**BACKGROUND**

This case arises from the somewhat macabre market for contingent cost insurance which mitigates the risk in purchasing the life insurance policies of still-living individuals. Life Settlements Corp. d/b/a Peachtree Life Settlements ("Peachtree") purchases life insurance policies from elderly insureds, offering them, while still of this world, a cash payment at a discount to the face value of the policies. Peachtree's purchase price is based on a variety of factors, perhaps the most important of which is its own independent estimate of the insured's life expectancy. Upon purchase, Peachtree becomes the new policy owner and beneficiary, and continues to pay premiums until the insured dies.

Peachtree buys some life insurance policies for its own account, and others for the accounts of related entities, including Life Receivables Trust (the "Trust"), a special purpose vehicle created for this objective. In these instances, after Peachtree performs the actuarial and financial legwork needed to purchase the policy, it transfers its interest in the policy to the Trust, but continues to receive contractual fees, although it does not hold a financial interest in or beneficially own the Trust. The Trust, on the other hand, pays the premiums on the policy while the insured remains alive in order to keep the policies in force. Upon the insured's demise, the Trust is paid the "net death benefit" on the policy.

As a hedge against the possibility that the insured might live past his or her projected life expectancy, Peachtree buys contingent cost insurance ("CCI") policies from Syndicate 102 for the benefit of the Trust. If the insured lives more than two years beyond his or her life expectancy, Syndicate 102 pays the Trust the net death benefit and assumes the policy itself.

This litigation centers around Peachtree's August 1, 2000 purchase of two life insurance policies owned by, and for the benefit of, the daughter of the named insured, Mr. Wang. On February 5, 2001, Peachtree, on behalf of the Trust, obtained from Syndicate 102 a CCI policy with a $5 million net death benefit. The policy was signed by Syndicate 102 as underwriter, the Trust as assured, and Peachtree as originator and servicer. It contained a mandatory arbitration clause:

> 1. All disputes and differences arising under or in connection with this Insurance shall be referred to arbitration under the American Arbitration Association Rules.
>  . . .
>
> 3. The Arbitration Tribunal may in its sole discretion make such orders and directions as it considers to be necessary for the final determination of the matters in dispute; provided that the parties shall each retain the right to appeal errors of law to a court of law having jurisdiction of the matters addressed herein and, each party executing this Insurance hereby consents and agrees that the state or federal courts located in New York shall have exclusive jurisdiction to hear and determine any such matters. The Arbitration Tribunal shall have the widest discretion permitted under the law governing the arbitral procedure when making such orders or directions.

Mr. Wang outlived his calculated life expectancy by more than two years, thereby triggering Syndicate 102's obligation to pay the Trust and assume the policies. When Peachtree requested payment of the net death benefit as provided in the policy, Syndicate 102 refused. In response, the Trust, in accord with the policy, initiated an arbitration claim against Syndicate 102, which withheld payment on the grounds that the Trust had fraudulently misrepresented the date on which it acquired the Wang policies and had fraudulently calculated Mr. Wang's life

expectancy.[3]

Along with its arbitration defense, Syndicate 102 propounded certain discovery requests upon both the Trust *and* Peachtree, the latter of which is at issue on this appeal. The Trust responded by producing the requested documents, but counseled that with respect to Peachtree, it "does not control" Peachtree and "has no ability to compel the production of documents from" it. Nonetheless, the Trust agreed to produce documents in its possession to the extent that they were directed at Peachtree in its role as "servicer," but not in its role as "provider of life settlements or as originator" of the CCI policy. In July 2006, Syndicate 102 served on Peachtree a separate Notice of Arbitration, and requested that Peachtree "join formally in the pending" Syndicate 102-Trust arbitration. Peachtree refused to consent to joinder, and no joinder was ordered.

At the request of Syndicate 102, the arbitration panel ordered the Trust to produce *all* responsive documents in its possession relating to Peachtree in *any* capacity. The Trust argued that Peachtree failed to supply all of these documents, leading to another order from the arbitration panel requiring the Trust to obtain the documents from Peachtree. On August 11, 2006, Peachtree informed the Trust that it "is not a party to the arbitration . . . and that the arbitration panel . . . has *no power or jurisdiction* over [Peachtree]. Consequently, [Peachtree] is not bound by the arbitration panel's rulings and orders, and will not consider them." Finally,

---

[3] Among other arguments, the Trust contended that Syndicate 102 violated the "pay first" provision of the CCI policy, which states that "under no circumstances . . . shall the Underwriters be entitled to submit any dispute as to the Underwriters' obligation to pay a Claim under this Insurance to arbitration prior to payment of such Claim as set forth in the section entitled Claim Procedures." On October 24, 2006, the arbitration panel denied the Trust's request to enforce the CCI policy's "pay first" provision.

Syndicate 102 requested that the panel issue a formal subpoena, a step not opposed by the Trust. In December 2006, the arbitration panel issued a subpoena requiring Peachtree to produce its responsive documents.

Facing the panel's subpoena, in January 2007, Peachtree filed suit in federal court and moved to quash the subpoena. Peachtree argued that (1) an arbitration panel cannot compel pre-hearing discovery from a non-party, and (2) the policy's terms precluded Syndicate 102 from raising any defenses in arbitration prior to paying the Trust. Syndicate 102 cross-moved to compel Peachtree's compliance with the subpoena.

Following a hearing, Judge Owen granted Syndicate 102's motion to enforce the subpoena, holding that there was "no reason to disturb the arbitration panel's issuance of such a subpoena to an entity that, while not a party to the specific arbitration at issue, is a party to the arbitration agreement," and that a district court could not disturb the arbitration's non-final order refusing to enforce the policy's "pay first" provision. In light of the district court's order, Peachtree complied with the subpoena.[4] This appeal followed.[5]

[4] As an initial matter, we note that Peachtree's intervening compliance with the subpoena does not render this appeal moot. Peachtree has a privacy interest in the documents, and will be entitled to their return if the subpoena is quashed. Both the Supreme Court and this Court have held that interest is enough to defeat a mootness challenge (although Syndicate 102 raises no such challenge). *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 469 (2d Cir. 1996).

[5] In its brief on appeal to this Court, Peachtree raised two issues: (1) that the arbitration panel lacked the authority to issue a pre-hearing document subpoena to a non-party, and (2) that the panel had no contractual authority to issue the subpoena. However, in its September 15, 2008 letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), Peachtree formally withdrew the second point in its brief, and advised the Court that the Trust had commenced a state court action in the Commercial Division of the Supreme Court, New York County moving

**DISCUSSION**

Congress enacted the FAA in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Section 7, the only FAA provision to address discovery, states that:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, *may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case*. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added).

Although this Court has observed that this "express language" refers only to documents brought before the arbitrators by a testifying witness, *see Nat'l Broadcasting Co.*, 165 F.3d at 187-88, it has not taken a side in the circuit split over whether section 7 "may be invoked as

---

to invalidate the arbitration agreement. That motion has since been denied, and Peachtree has been joined as a party to that litigation. *See Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's*, No. 601244/08, 2008 N.Y. Slip. Op. 32626U (Sup. Ct. N.Y. County Sept. 19, 2008).

authority for compelling pre-hearing depositions and pre-hearing document discovery, especially where such evidence is sought from non-parties," *id.* at 188.

The Eighth Circuit takes the view that although the statute does not "explicitly authorize the arbitration panel to require the production of documents for inspection by a party . . . implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing."[6] *In re Security Life Ins. Co.*, 228 F.3d at 870-71. The Fourth Circuit, however, has concluded that arbitral subpoena powers are "limited to those created by the express provisions of the FAA," which do not include "the authority to order non-parties to . . . provide the litigating parties with documents during prehearing discovery." *Comsat Corp.*, 190 F.3d at 275. Nonetheless, because arbitral efficiency would be "degraded if the parties are unable to review and digest relevant evidence prior to the arbitration hearing," that court has read into the FAA an exception under which a party could petition the district court to compel discovery "upon a showing of special need or hardship."[7] *Id.* at 276.

More recently, the Third Circuit issued its decision in *Hay Group*. Then-Judge Alito wrote that the plain language of section 7 "unambiguously restricts an arbitrator's subpoena

---

[6] This interpretation of section 7 has been adopted by several courts within our Circuit. *See Atmel Corp. v. LM Ericsson Telefon, AB*, 371 F. Supp. 2d 402, 403 (S.D.N.Y. 2005); *Integrity Ins. Co. v. Am. Centennial Ins. Co.*, 885 F. Supp. 69, 71 (S.D.N.Y. 1995).

[7] In addition, the Sixth Circuit has authorized a subpoena to a non-party for pre-hearing documents. *See Am. Fed'n or Television & Radio Artists, AFL-CIO v. WJBK-TV (New World Commc'ns of Detroit, Inc.)*, 164 F.3d 1004, 1007 (6th Cir. 1999). While that court suggested that it might agree that the FAA implicitly permits the subpoena, it grounded its holding in section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. *Id.* at 1009.

power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time." *Hay Group*, 360 F.3d at 407. When placed in historical context, section 7's narrow subpoena power makes sense, since it largely mirrors the previous version of Federal Rule of Civil Procedure 45. *Id.* "From its adoption in 1937 until its amendment in 1991, Rule 45 did not allow federal courts to issue pre-hearing document subpoenas on non-parties." *Id.* at 407. Like section 7, the old Rule 45 stated that "Every subpoena . . . shall command each person to whom it is directed to attend and give testimony" and "may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein." *Id.* at 407-08 (quoting Fed. R. Civ. P. 45 (1990)) (emphasis in original). With this context in mind, the Third Circuit rejected what it termed the Eighth Circuit's "power-by-implication analysis." *Id.* at 408. "By conferring the power to compel a non-party witness to bring items to an arbitration proceeding while saying nothing about the power simply to compel the production of items without summoning the custodian to testify, the FAA implicitly withholds the latter power." *Id.* Indeed, "until its amendment in 1991, Rule 45 . . . was framed in terms quite similar to Section 7 of the FAA, but courts did not infer that, just because they could compel a non-party witness to bring items with him, they could also require a non-party simply to produce items without being subpoenaed to testify."[8] *Id.* at 409.

_____

[8] The court added that the Eighth and Fourth Circuits' concerns with enhancing arbitral efficiency were unconvincing since "any argument in favor of ignoring the literal meaning of the FAA in the name of efficiency seems to cut against Supreme Court precedent" holding that giving effect to private agreements – rather than encouraging arbitral efficiency – is the central purpose of the FAA. *Hay Group*, 360 F.3d at 410 (citing *Dean Witter Reynolds, Inc. v. Byrd*,

*Hay Group* signaled what one commentator has called an "emerging rule" that "the arbitrator's subpoena authority under FAA § 7 does not include the authority to subpoena nonparties or third parties for prehearing discovery even if a special need or hardship is shown." Thomas H. Oehmke, 3 Commercial Arbitration § 91:5 (2008). This growing consensus is evidenced by the wide array of district court decisions – including those within this Circuit – that have adopted *Hay Group*'s holding. *See, e.g.*, *Matria Healthcare, LLC v. Duthie*, No. 08 C 5090, 2008 WL 4500173, at *5 (N.D. Ill. Oct. 6, 2008); *Guyden v. Aetna, Inc.*, No. 3:05cv1652, 2006 WL 2772695, at *7 (D. Conn. Sept. 25, 2006); *Odfjell ASA v. Celanese AG*, 328 F. Supp. 2d 505, 507 (S.D.N.Y. 2004).

"When a statute's language is clear, our only role is to enforce that language 'according to its terms.'" *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 236 (2d Cir. 2006) (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)). The language of section 7 is straightforward and unambiguous. Documents are only discoverable in arbitration when brought before arbitrators by a testifying witness. The FAA was enacted in a time when pre-hearing discovery in civil litigation was generally not permitted. The fact that the Federal Rules of Civil Procedure were since enacted and subsequently broadened demonstrates that if Congress wants to expand arbitral subpoena authority, it is fully capable of doing so. There may be valid reasons to empower arbitrators to subpoena documents from third parties,[9] but we must

470 U.S. 213, 218-19 (1985)).

[9] There are also valid reasons for limited arbitral subpoena authority, since timeliness and efficiency are among the primary reasons to resolve disputes through arbitration. *See Nat'l Broadcasting Co.*, 165 F.3d at 190-91.

interpret a statute as it is, not as it might be, since "courts must presume that a legislature says in a statute what it means and means in a statute what it says . . . ." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). A statute's clear language does not morph into something more just because courts think it makes sense for it to do so. Thus, we join the Third Circuit in holding that section 7 of the FAA does not authorize arbitrators to compel pre-hearing document discovery from entities not party to the arbitration proceedings.

Syndicate 102 submits two reasons why this rule should not apply to Peachtree. First, it argues that Peachtree is "intimately related" to the Trust. Because the Trust is a special purpose vehicle lacking any permanent employees of its own, Peachtree acted on its behalf in acquiring the Wang policies, performing life expectancy calculations, and servicing the Trust's policies in exchange for contractual fees. As a result, Syndicate 102 contends, and the arbitration panel agreed, that Peachtree's documents are "essential" to the arbitration between the Trust and Syndicate 102. But section 7 contains no discovery exception for closely related entities.[10] Moreover, section 7's subpoena power is not restricted to parties – it encompasses "any person" the arbitrators choose to bring before them. The limitation in the statute is expressed in terms of the method and timing of the subpoena. The documents must be produced by a witness at a hearing before the arbitrators.

---

[10] The district court did not consider ordering compliance on the basis of this argument. In fact, if anything, Peachtree's close relationship with the Trust and the underlying claim is a strong reason why it might have been (and might yet be) joined as a party to the arbitration. However, the panel repeatedly refused Syndicate 102's requests for Peachtree's joinder, and we may not second-guess such interlocutory arbitral orders. *See, e.g.*, *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980).

-11-

Second, Syndicate 102 contends that whatever its application to third parties, section 7 authorizes arbitrators to subpoena documents from entities that, like Peachtree, are parties to the arbitration agreement, if not the arbitration proceeding itself. To support its argument, Syndicate 102 correctly points out that the third party ordered to produce documents in *Security Life* was a party to the underlying contract. *See* 228 F.3d at 871. But that fact was hardly determinative; the Eighth Circuit observed that the third party was no "mere bystander" to the arbitration because it was a party to the contract *after* it had already determined that the power to order pre-hearing document discovery is "implicit in an arbitration panel's power." *Id.* at 870-71. More importantly, the plain language of section 7 makes no such distinction.

Although section 7 does not distinguish between parties and non-parties to the actual arbitration *proceeding*, an arbitrator's power over parties stems from the arbitration agreement, not section 7. *See Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982). Where agreements so provide, that authority includes the power to order discovery from the parties in arbitration since "the FAA lets parties tailor some, even many features of arbitration by contract, including . . . procedure." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 128 S.Ct. 1396, 1404 (2008). An arbitrator can enforce his or her discovery order through, among other things, drawing a negative inference from a party's refusal to produce, *see Nat'l Cas. Co. v. First State Ins. Group*, 430 F.3d 492, 498 (1st Cir. 2005), and, ultimately, through rendering a judgment enforceable in federal court, *see* 9 U.S.C. § 9. Arbitrators have no such power to compel discovery from third parties – even those (like Peachtree) that signed the underlying arbitration agreements.

Syndicate 102 rightfully does not argue that Peachtree's signature to the CCI policy containing the arbitration agreement provides an independent basis for enforcing the arbitral subpoena.[11] The parties to the CCI policy, including Peachtree, contractually agreed to abide by "American Arbitration Association Rules," which are incorporated by reference into the contract. *See, e.g.*, *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005). AAA Commercial Rule 31(d) governs subpoenas, and states that an "arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently." Although this subpoena power can be interpreted as authorizing arbitrators to issue subpoenas to parties to the arbitration proceeding and non-parties alike, its power with regard to non-parties "is best seen . . . as nothing more than authorization by the parties – binding only upon the parties – for an arbitrator to order non-party discovery, subject to the willingness of the non-party voluntarily to comply with such order." Paul D. Friedland & Lucy Martinez, "Arbitral Subpoenas Under U.S. Law & Practice," 14 Am. Rev. of Int'l Arbitration 197, 201 (2003). But when a non-party refuses to comply voluntarily, as Peachtree has here, the party seeking discovery is limited to section 7 as a vehicle to enforce the subpoena.

Interpreting section 7 according to its plain meaning "does not leave arbitrators powerless" to order the production of documents. *Hay Group*, 360 F.3d at 413 (Chertoff, J., concurring). On the contrary, arbitrators may, consistent with section 7, order "any person" to produce documents so long as that person is called as a witness at a hearing. 9 U.S.C. § 7.

---

[11] We need not decide whether entities can, by contract, agree to comply with discovery orders in arbitrations to which they are not parties.

Peachtree concedes as much, admitting that "Syndicate 102 could obtain access to the requested documents by having the arbitration panel subpoena Peachtree to appear before the panel and produce the documents." In *Stolt-Nielsen*, we held that arbitral section 7 authority is not limited to witnesses at merits hearings, but extends to hearings covering a variety of preliminary matters.[12] 430 F.3d at 577-79. As then-Judge Chertoff noted in his concurring opinion in *Hay Group*, the inconvenience of making a personal appearance may cause the testifying witness to "deliver the documents and waive presence." 360 F.3d at 413 (Chertoff, J., concurring). Arbitrators also "have the power to compel a third-party witness to appear with documents before a single arbitrator, who can then adjourn the proceedings." *Id.* at 413. Section 7's presence requirement, however, forces the party seeking the non-party discovery – and the arbitrators authorizing it – to consider whether production is truly necessary. *See id.* at 414. Separately, we note that where the non-party to the arbitration is a party to the arbitration agreement, there may be instances where formal joinder is appropriate, enabling arbitrators to exercise their contractual jurisdiction over parties before them. In sum, arbitrators possess a variety of tools to compel discovery from non-parties. However, those relying on section 7 of the FAA must do so according to its plain text, which requires that documents be produced by a testifying witness.

**CONCLUSION**

For the foregoing reasons, the order of the district court is REVERSED.

---

[12] *Stolt-Nielsen* carefully distinguishes *hearing testimony* from *depositions*, observing that the hearing in question was before all three arbitrators, who ruled on evidentiary issues, and became a part of the arbitration record. 430 F.3d at 578.