Jerry M. CHAPMAN, Appellant–Plaintiff,

v.

GRIMM & GRIMM, P.C., Edgar A. Grimm, and Shirley J. Skinner, Appellees–Defendants.

No. 57A03–9212–CV–412.

Court of Appeals of Indiana, Third District.

Aug. 3, 1994.

Edward L. Murphy, Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, for appellant.

Alan Ver Planck, David R. Steiner, Barrett & McNagny, Fort Wayne, Robert D. Brown, James D. Mc Quillan, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellees.

GARRARD, Judge.

Chapman commenced an action for civil malicious prosecution against Walter and Shirley Skinner[1], his former in-laws, and Edgar Grimm and Grimm & Grimm, P.C., their attorneys. His claim concerned three separate situations in which he had been involved: an action for grandparents' visitation commenced by Skinners, "various proceedings and pleadings" (concerning custody and visitation) brought by Claudia Chapman in the dissolution case, and an action challenging the validity of the property disposition in the Chapman divorce case on grounds of fraud. The trial court eventually granted summary judgments in favor of all defendants on the various claims thus disposing of the entire suit. Chapman appeals.

■ We separately consider each partial summary judgment entered by the court, noting at the outset that the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and, (4) the original action was terminated in the plaintiff's favor. *Willsey v. Peoples Fed. Sav. & Loan* (1988), Ind.App., 529 N.E.2d 1199, 1205; *F.W. Woolworth Co., Inc. v. Anderson* (1984), Ind.App., 471 N.E.2d 1249.

Issue I.   Grandparents' Visitation

The Chapmans' marriage was dissolved in the Wabash Circuit Court in June, 1980. On December 1, 1982 Grimm filed a grandparents' visitation action on behalf of the Skinners in the LaGrange Circuit Court. At that time Chapman, the Skinners and the children all resided in LaGrange County. Chapman moved for dismissal on the ground that the court lacked jurisdiction of the case. In March 1983 the parties entered into a visitation agreement, but Chapman did not concede jurisdiction. In July Skinners sought a contempt citation. The trial court found Chapman in contempt and subsequently overruled his motion to correct errors. (Chapman argues in part that the LaGrange Circuit Court did not ever rule on his motion to dismiss for lack of jurisdiction. While we find no docket entry noting denial of Chapman's motion, it is clear from the colloquy between court and counsel at the hearing and the court's findings that the LaGrange Circuit Court, in fact, determined that it had jurisdiction.) Chapman appealed and the Court of Appeals reversed upon the basis that Chapman had preserved the issue of jurisdiction of the particular case and the judgment was voidable on direct appeal. *In re Chapman* (1984), Ind.App., 466 N.E.2d 777.

■ The rule in Indiana is that a decision by a competent tribunal in favor of the person(s) who initiated the civil action complained of is conclusive evidence of probable cause, even though that decision was subsequently reversed on appeal. *Cassidy v. Cain* (1969), 145 Ind.App. 581, 251 N.E.2d 852.

■ Chapman argues that the rule should have no application here because of the jurisdictional basis upon which the trial court was reversed. We disagree. The LaGrange Circuit Court is a court of general jurisdiction with authority to hear matters such as the Skinners' petition. Its judgment was not void, but merely voidable. It was a competent tribunal and its determination in favor of the Skinners conclusively establishes proba-

---

1. Walter Skinner passed away during the pendency of this litigation and no claim was filed against his estate.

ble cause thereby defeating this claim for malicious prosecution. *Cassidy, supra.*

Issue II. The Petition to Modify Custody.

In December, 1982 Chapman filed a petition in the Wabash Circuit Court for permission to leave the state with the children. Grimm appeared for Claudia Chapman (Claudia) and in January filed a cross petition seeking modification of the original custody order. On June 2, 1983 the court granted Chapman's petition to leave the state, denied Claudia's petition, and ordered visitation between Claudia and the children which required Chapman to advance Claudia's and the children's expenses for travel for visitation. Claudia filed a motion to correct errors which was denied on October 24, 1983. On October 27, 1983, through Grimm she filed another petition to modify alleging a substantial change in circumstances since June 3, 1983 and urging the court to utilize interview and professional assistance in evaluating the children's custody needs. On January 9, 1984 the court denied the October 27 petition as a repetitive motion. As a result of other pleadings and hearings, on November 25, 1985 the court determined that between June 2, 1983 and September 23, 1985 Chapman had failed to pay the previously ordered expenses attending visitation, entered a judgment against Chapman in favor of Claudia for $8010, ordered Chapman to pay Grimm $4000 attorney fees, found Chapman in direct contempt and ordered a body attachment. There is no record that the body attachment was ever served, and it and the contempt finding were vacated on appeal in *Chapman v. Chapman* (1987), Ind.App., 512 N.E.2d 414.

At the outset we note that on appeal Chapman argues that it was the second petition to modify custody filed October 27, 1983, that constitutes the basis for his second claim. That was not the assertion made in his complaint, or addressed by the motion for summary judgment or, apparently, that addressed by the trial judge in his extensive and detailed findings. In those matters Chapman asserted that Grimm, with the contrivance of the Skinners, filed "various proceedings and pleadings" in the dissolution cause and as recited above, Claudia was successful in some of those matters. Our reason for reporting this has a broader sweep than our concern that Chapman, by changing his contentions, has thereby waived consideration of the issue.

We must consider the propriety of maintaining an action for civil malicious prosecution based upon the filing of petitions to modify custody, support and visitation in marriage dissolution proceedings. For purposes of analysis our attention focuses upon the requirements that the defendant initiate a proceeding and that there be probable cause.

■ In his findings and conclusions Judge Probst noted that marriage dissolution proceedings must be open to file pleadings at any time there is concern for the welfare of the children even if the pleadings turn out to be unsuccessful. We agree that this reflects our public policy and the state's interest in the welfare of our children.

■ Secondly, we note that while unfortunately it is not unusual for parents in domestic relations cases to use custody, support and visitation claims to attempt to vindicate their feelings or avenge themselves against a former spouse, IC 31–1–11.5–24(c) (concerning visitation) and IC 34–1–32–1 (all civil actions) permit the award of attorney fees for frivolous, groundless or unreasonable claims. The other damage elements normally recoverable in a malicious prosecution action would appear to be more attendant to the original action for dissolution than any subsequent petition to modify. In short the statutory law appears adequate to cover the bulk of actual damages incurred if one is subjected to frivolous or vexatious petitions for modification.

■■ It is, of course, familiar ground for us to note that when the trial court acquires jurisdiction in a marriage dissolution case, that jurisdiction continues during the minority of any children of the marriage. *See, e.g., Manners v. State* (1937), 210 Ind. 648, 5 N.E.2d 300. Upon that basis it appears that in filing a petition to modify custody, support or visitation, a petitioner is not actually *initi-*

*ating* a civil proceeding in the sense required for an action for malicious prosecution.

Chapman seeks to avoid the consequence of that conclusion by relying upon *House v. Lesow* (1975), 167 Ind.App. 449, 339 N.E.2d 86. In that case the court determined that attachment and garnishment proceedings initiated at the same time the principal suit to recover commissions was filed could be the subject of a malicious prosecution claim if initiated without probable cause even though the original plaintiff had recovered on the commission claim. We see this as in accord with the position of the Restatement of Torts, Second, § 674, comment (f) which permits the action to be based upon ancillary proceedings such as the appointment of a receiver or contempt.

■ Petitions to modify custody, etc. are not ancillary proceedings. Rather than attending upon or aiding a principal proceeding they exist as a continuation of the dissolution proceeding already commenced.

Upon the basis of the foregoing we conclude that a petition to modify custody or visitation in a dissolution proceeding will not, and should not, ground an action for malicious prosecution. Accordingly, summary judgment was properly granted in favor of Grimm.

■ Concerning the Skinners, we additionally find that summary judgment was properly granted in their favor because the evidence failed to establish a genuine issue that they instigated the petitions brought by their daughter within the meaning of an action for malicious prosecution. We adopt the position of the Restatement of Torts, Second, § 653, comment (f), relied upon by the trial court, that one who merely encourages or advises a third person to bring proceedings that the third person already has in contemplation, does not thereby procure the initiation of the proceedings.

Issue III. The fraud action.

In May, 1983, Grimm filed an action for damages on Claudia's behalf against Chapman, Roger C. Summers and Steven C. Daniel. Summers and Daniel practiced law together and represented both of the Chapmans during their divorce. Summers and Chapman were also first cousins. The complaint alleged fraud on the basis that, among other things, Chapman made false statements concerning insurance coverage and assets, and Summers and Daniel prepared and pressured Claudia into entering into an unfair property settlement. Chapman moved for summary judgment on the theory that the two year statute of limitations applied and had expired. Grimm argued that the six year limitation for fraud actions was the appropriate statute of limitations. The trial court granted Chapman's motion and we affirmed in a memorandum decision on April 26, 1986.

In the present action the trial court found that there was probable cause for bringing the fraud complaint and that it would not have been time barred if the statute of limitations for fraud applied. Without reciting unnecessary detail we agree that the materials before the court established probable cause to bring the action apart from the question of the statute of limitations. The issue before us concerns the impact of that question.

■ In *Wong v. Tabor* (1981), Ind.App., 422 N.E.2d 1279, we considered at length the competing considerations that must bear upon the reasonableness of the attorney's belief that a claim merits litigation. We concluded that objective probable cause exists unless no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit. 422 N.E.2d at 1288.

■■ The general rule is that it is the nature or substance of an action, rather than its form, that will determine the applicability of the statute of limitations. *Shideler v. Dwyer* (1981), Ind., 275 Ind. 270, 417 N.E.2d 281. In the area of claims against attorneys this has predictably given rise to litigation concerning whether the two year statute found in *Shideler* to apply to malpractice claims or some other statute arguably applicable to the alleged facts controls the action. *See, e.g. Rice v. Strunk* (1994), Ind.App., 632 N.E.2d 1151; *Keystone Dist. Park v. Ken-*

*nerk, et al.* (1984), Ind.App., 461 N.E.2d 749; *Whitehouse v. Quinn* (1982), Ind.App., 443 N.E.2d 332, opinion on transfer, 477 N.E.2d 270. Furthermore, in *Sanders v. Townsend* (1991), Ind., 582 N.E.2d 355, 358, our supreme court recognized that an attorney may be held liable for actual fraud committed within the context of an attorney-client relationship, and in *Seevers v. Arkenberg* (S.D.Ind.1989), 726 F.Supp. 1159, Judge Barker found that the six year fraud statute of limitations rather than the two year limitation period for legal malpractice applied. It cannot be said that as a matter of law no competent and reasonable attorney would fail to recognize the bar of the two year statute of limitations on the facts of this case. Furthermore, Grimm presented his own affidavit of subjective good faith in bringing the action together with the affidavit of Alfred J. Pivarnik, former justice of the Indiana Supreme Court, that in his professional opinion there was probable cause to bring the action. We conclude that the trial court properly granted summary judgment on the basis that probable cause was shown to exist. In addition, as found by the trial court, because Claudia had probable cause for bringing the action, Skinners could not be liable for encouraging her to do so.

The judgment is affirmed.

STATON and RILEY, JJ., concur.