**In re the Subpoena Issued to BECK'S SUPERIOR HYBRIDS, INC.**

**Beck's Superior Hybrids, Inc., Appellant,**

**v.**

**Monsanto Company and Monsanto Technology LLC, et al., Appellees.**

**No. 29A05–1008–MI–489.**

Court of Appeals of Indiana.

Jan. 12, 2011.

George T. Patton, Jr., Peyton L. Berg, Bose McKinney & Evans LLP, Indianapolis, IN, Jeffrey S. Nickloy, Campbell Kyle Proffitt LLP, Noblesville, IN, Eugenia G. Carter, Barbara J. Zabawa, Whyte Hirschboeck Dudek SC, Madison, WI, Attorneys for Appellant.

Michael Ryan Hartman, Sonia S. Chen, Bingham McHale LLP, Indianapolis, IN, Omri E. Praiss, Husch Blackwell LLP, St. Louis, MO, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In 2002, Monsanto Company and Monsanto Technology, LLC (collectively, "Monsanto") entered into a corn license agreement and a soybean license agreement with Pioneer Hi–Bred International and its parent company, E.I. DuPont de Nemours & Company (collectively, "DuPont"). Pursuant to those agreements, any disputes between the parties were to be resolved by arbitration in New York City. On May 4, 2009, Monsanto filed a demand for arbitration against DuPont, alleging that DuPont had engaged in a sublicensing scheme involving numerous third parties throughout the United States, including Beck's Superior Hybrids, Inc. ("Beck's") in Indiana. Thereafter, at Monsanto's request the arbitration panel issued a subpoena *duces tecum* to Beck's, ordering Beck's to appear at a preliminary hearing, in Indiana, before one of the panel members and to produce business records relating to Monsanto's arbitration claim.

Beck's refused to comply with the subpoena on the grounds that the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 (2010) ("the Act"), required Monsanto to seek enforcement of its nonparty subpoena in "the United States district court for the district" in which the arbitration panel was sitting, the Southern District of New York. *See* 9 U.S.C. § 7 (2010). Cognizant of the fact that it lacked subject matter jurisdiction to file a petition in the New York federal court, and that that court lacked personal jurisdiction over Beck's, Monsanto instead filed a petition to assist in the Hamilton Superior Court, pursuant to Indiana Trial Rule 28(E), to compel Beck's to comply with the subpoena. The trial court agreed with Monsanto and ordered Beck's to comply with the arbitration panel's subpoena.

Beck's now appeals, asserting that Section 7 of the Act preempts Indiana Trial Rule 28(E). We agree and hold that Section 7 is unambiguous: to enforce an arbitration panel's subpoena against a nonparty, the party seeking enforcement must file its petition "in the United States district court for the district" where the arbitration panel, or a majority of its members, is sitting. *See id.* That district court is in the Southern District of New York. We also hold that Monsanto's lack of federal subject matter jurisdiction to enforce its subpoena does not justify ignoring the plain text of Section 7. To the contrary, the statutory gap in enforceability reflects a clear policy choice by Congress that we may not reconsider. Therefore, we reverse the trial court's order and remand with instructions that the court dismiss Monsanto's petition to assist.

### FACTS AND PROCEDURAL HISTORY[1]

In 2002, Monsanto entered into two seed license agreements with DuPont. Pursuant to those agreements, any dispute between the parties is to be resolved by "arbitration proceedings[, which] shall be held in New York, New York." Appellant's App. at 145. On May 4, 2009, Monsanto filed a demand for arbitration and statement of claim against DuPont in New York, alleging that DuPont was engaged in a sublicensing scheme whereby DuPont distributed Monsanto's "Roundup Ready technology" to unaffiliated third parties throughout the United States, including Beck's, an Indiana corporation. *See* Appellees' Br. at 5. This scheme, according to Monsanto, allows DuPont to charge a

---

1. We held oral argument on December 6, 2010.

lower price to third parties for Monsanto's licensed seed than Monsanto charges for them, and it is allegedly in direct violation of the Monsanto–DuPont agreements.

On November 12, 2009, Monsanto requested the arbitration panel to issue eight nonparty subpoenas *duces tecum* to the third parties that had allegedly purchased Monsanto's products through DuPont. DuPont objected to the subpoena requests on several grounds. On December 11, the arbitration panel narrowed the scope of the requested subpoenas and then agreed to issue them.

On February 1, 2010, Monsanto served Beck's with a subpoena issued by the New York arbitration panel. On March 2, Beck's counsel informed Monsanto of Beck's legal position on whether it had to comply with that subpoena:

> in light of the location of the arbitration, the provisions in your license agreement[s] with [DuPont] . . ., and the domicile[ ] of our non-party client[ ], *we have concluded that this New [ ] York-based arbitration panel [ ] has no power to issue subpoenas to non-parties and has no jurisdiction over our client* [ ]. In addition to these deficiencies in authority and process, the requests are overbroad, unduly burdensome and seek our client['s] confidential and proprietary information. Our client[ ] will not be providing the documents requested in the subpoena[.]

Appellant's App. at 60 (emphasis added).

In response to Beck's objections, and similar objections from the other alleged customers of DuPont, on March 18 Monsanto asked the arbitration panel to issue revised subpoenas. In particular, Monsanto stated:

**2.** On July 22, 2010, an Illinois trial court

rather than proceed with a very expensive and time-consuming process of opening up miscellaneous matters in each jurisdiction to litigate all the objections raised[,] . . . Monsanto proposes a compromise favored by courts construing [the Act]. Consistent with precedent from the Second Circuit, Monsanto requests that the Tribunal issue revised subpoenas that require each of the [customers] to appear at a preliminary hearing in front of one member of the Panel and produce relevant documents (with no deposition).

*Id.* at 149. In other words, Monsanto asked the arbitration panel to apply Section 7 of the Act to compel Beck's and others

> to appear at a preliminary proceeding before a single member of the Panel at a location in close proximity to [Beck's] principal place of business; . . . to produce relevant documents at the preliminary proceeding . . .; and . . . to be prepared to testify at the preliminary hearing to establish that the documents produced are authentic. . . .

*Id.* at 151. On March 31, the arbitration panel issued the revised subpoenas but did not state whether the subpoenas could be enforced under the Act or state procedural law.

On April 22, Monsanto served Beck's with the revised subpoena. That same day, counsel for Beck's informed Monsanto that Beck's would not comply with the revised subpoena. On June 11, Monsanto filed a petition to assist in the Hamilton Superior Court pursuant to Indiana Trial Rule 28(E). After a hearing, on August 4 the trial court granted Monsanto's petition and ordered Beck's to comply with the arbitration panel's revised subpoena by attending a preliminary hearing before a single arbitrator in Atlanta, Indiana.[2] On

reached a similar result in Monsanto's favor.

August 10, the court issued an amended order, in which the court clarified that any testimony provided by Beck's was to be limited to authentication of business records.[3] This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

▮▮▮▮ Beck's contends that the trial court's order that it comply with the arbitration panel's revised subpoena is erroneous because Section 7 of the Act preempts Indiana Trial Rule 28(E). As this court recently stated:

> Because federal law is the supreme law of the land under the Supremacy Clause of the United States Constitution, state laws that interfere with or are contrary to federal law are invalidated under the preemption doctrine. *Kuehne v. United Parcel Serv., Inc.*, 868 N.E.2d 870, 873 (Ind.Ct.App.2007). "[A] cardinal rule of preemption analysis is the starting presumption that Congress d[id] not intend to supplant state law.'" *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 [115 S.Ct. 1671, 131 L.Ed.2d 695] (1995)). This presumption against preemption takes on added significance where federal law is claimed to bar state action in fields of traditional state regulation. *Id.* "Accordingly the historic police powers of

the States are not to be superseded by a Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* (quoting *Micronet, Inc. v. Ind. Util. Regulatory Comm'n*, 866 N.E.2d 278, 285 (Ind.Ct.App.2007)).

There are three variations of the federal preemption doctrine: (1) express preemption, which occurs when a federal statute expressly defines the scope of its preemptive effect; (2) field preemption, which occurs when a pervasive scheme of federal regulations makes it reasonable to infer that Congress intended exclusive federal regulation of the area; and (3) conflict preemption, which occurs when it is either impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *Id.*

*Florian v. Gatx Rail Corp.*, 930 N.E.2d 1190, 1195–96 (Ind.Ct.App.2010) (alterations original), *trans. denied.* "The question, at bottom, is one of statutory intent, and we accordingly begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quotations omitted). Determining statutory intent is a question of law we review de

---

That order is currently on appeal. However, on August 25, 2010, a Nebraska trial court denied a similar petition filed by Monsanto on two grounds. First, the Nebraska trial court concluded that the Nebraska law pursuant to which Monsanto had filed its petition was preempted by the Act. Second, the court stated that Section 7 of the Act required Monsanto to file its petition in the United States District Court for the Southern District of New York. Monsanto did not appeal that order.

3. On September 20, 2010, the trial court granted a limited stay of its order. Specifically, the court stayed enforcement of its order pending this appeal or until December 20, 2010, whichever happened first. The apparent rationale for the trial court's timeframe was to not cause undue delay in the New York arbitration proceeding, which is scheduled for a final hearing on the merits on April 4, 2011. On December 14, 2010, this court, *sua sponte*, issued an order vacating the trial court's timeframe and permanently staying the court's order.

novo.[4] *See, e.g., State v. Prater,* 922 N.E.2d 746, 748 (Ind.Ct.App.2010), *trans. denied.*

It is not disputed that the New York arbitration proceeding is governed by the Act or that Section 7 applies to the subpoena.[5] And Beck's concedes that neither express preemption nor field preemption applies here. *See* Appellant's Br. at 14. Rather, Beck's contends that Indiana Trial Rule 28(E), as applied, is in conflict with the accomplishment and execution of Section 7's purposes and objectives. *See Florian,* 930 N.E.2d at 1195–96; *LaSalle Group, Inc. v. Electromation of Delaware County, Inc.,* 880 N.E.2d 330, 333 (Ind.Ct. App.2008).

### Background Federal Law

■ A discussion of preemption begins with a review of the federal law at issue. *E.g., Florian,* 930 N.E.2d at 1196–97. The Supreme Court of the United States has discussed the history and policy of the Act:

> The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* provides the starting point for answering the questions raised in this case. The Act was intended to "revers[e] centuries of judicial hostility to arbitration agreements," by "plac[ing] arbitration agreements upon the same footing as other contracts.'" The Arbitration Act accomplishes this purpose by providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a "failure, neglect, or refusal" to comply with the arbitration agreement, § 4.
>
> The Arbitration Act thus establishes a "federal policy favoring arbitration," requiring that "we rigorously enforce agreements to arbitrate." This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. As we observed in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals" should inhibit enforcement of the Act " 'in controversies based on statutes.' " 473 U.S. [614], at 626–627 [105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ][.] Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds 'for the revocation of any contract,' " the Arbitration Act "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability."

4. Monsanto suggests that we must review the trial court's decision to issue a Rule 28(E) order under an abuse of discretion standard. But the questions on appeal are exclusively focused on whether the federal statute preempts the state trial rule. Those questions are questions of law. In any event, a trial court abuses its discretion when it enters an order that is contrary to law. *See, e.g., Munster Cmty. Hosp. v. Bernacke,* 874 N.E.2d 611, 613 (Ind.Ct.App.2007).

5. At oral argument, counsel for Monsanto suggested that the arbitration panel issued the revised subpoena pursuant to the rules of the American Arbitration Association. If that is so, then the subpoena against Beck's is without binding authority, since "[a]n arbitrator's authority over parties that are not contractually bound by the arbitration agreement is strictly limited to that granted by the Federal Arbitration Act." *Hay Group, Inc. v. E.B.S. Acquisition Corp.,* 360 F.3d 404, 406 (3d Cir. 2004).

The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. . . .

*Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–27, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (some citations omitted; alterations original). Indiana policy likewise favors arbitration and the enforcement of arbitration agreements. *See, e.g., MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.,* 802 N.E.2d 901, 905 (Ind.2004).

■ Here, the relevant provision of the Act is Section 7, which states as follows:

The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed. by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; *if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators,* or punish said person or persons for contempt in the same man-

ner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added). As Judge Alito said for the United States Court of Appeals for the Third Circuit, "[a]n arbitrator's authority over parties that are not contractually bound by the arbitration agreement is strictly limited to that granted by the Federal Arbitration Act." *Hay Group, Inc. v. E.B.S. Acquisition Corp.,* 360 F.3d 404, 406 (3d Cir.2004).

Case law from the federal courts of appeals makes clear that the type of subpoena issued by the arbitration panel against Beck's is authorized by Section 7. Specifically, in *Hay Group,* the Third Circuit held that an arbitrator may issue a Section 7 subpoena to a nonparty for the production of documents if the subpoena also requires the nonparty to appear. In a separate opinion concurring in Judge Alito's majority opinion, Judge Chertoff elaborated:

[O]ur opinion does not leave arbitrators powerless to require advance production of documents. . . .

Under section 7 of the [Act], arbitrators have the power to' compel a third-party witness to appear with documents before a single arbitrator, who can then adjourn the proceedings. This gives the arbitration panel the effective ability to require delivery of documents from a third-party in advance, notwithstanding the limitations of section 7 of the [Act]. In many instances, of course, the inconvenience of making such a personal appearance may well prompt the witness to deliver the documents and waive presence.

To be sure, this procedure requires the arbitrators to decide that they are prepared to suffer some inconvenience of their own in order to mandate what is, in reality, an advance production of

documents. But that is not necessarily a bad thing, since it will induce the arbitrators and parties to weigh whether advance production is really needed. And the availability of this procedure within the existing statutory language should satisfy the desire that there be some mechanism "to compel pre-arbitration discovery upon a showing of special need or hardship."

*Id.* at 413–14 (Chertoff, J., concurring) (citations omitted).

The Second Circuit, which has jurisdiction over New York, has agreed with both Judge Alito's analysis and Judge Chertoff's separate opinion, holding that Section 7 states that "[d]ocuments are only discoverable in arbitration when brought before arbitrators by a testifying witness." *Life Receivables Trust v. Syndicate 102 at Lloyd's of London,* 549 F.3d 210, 216 (2nd Cir.2008). However, the Second Circuit expressly qualified its opinion by noting that, "when a non-party refuses to comply voluntarily [with a subpoena,] . . . the party seeking discovery is limited to section 7 as a vehicle to enforce the subpoena. . . . [T]hose relying on section 7 . . . must do so according to its plain text." *Id.* at 218.

▋ As suggested by that language, the authority of an arbitration panel to issue a nonparty subpoena is not equivalent to the authority to enforce that subpoena. For example, the weight of federal case law demonstrates that neither the Act generally nor Section 7 specifically confers on litigants independent federal subject matter jurisdiction. Rather, "parties invoking Section 7 must establish a basis for subject matter jurisdiction independent of the [Act]," such as diversity of parties or federal question jurisdiction. *Stolt–Nielsen SA v. Celanese AG,* 430 F.3d 567, 572 (2nd Cir.2005); *see Amgen, Inc. v. Kidney Ctr. of Delaware County, Ltd.,* 95 F.3d 562, 567 (7th Cir.1996). Thus, if the party attempting to invoke Section 7 lacks federal jurisdiction to do so, then the arbitration panel's nonparty subpoena may not be enforced by "the United States district court." *See* 9 U.S.C. § 7; *Stolt–Nielsen,* 430 F.3d at 572; *Amgen,* 95 F.3d at 567.

Another example of such gaps in enforceability was on display in *Dynegy Midstream Services, LP v. Trammochem,* 451 F.3d 89 (2nd Cir.2006). In that case, the appellees obtained a documents-only subpoena from an arbitration panel sitting in New York City against DMS, a Houston-based entity. Avoiding the question of whether the documents-only subpoena was permissible under the Act (*Life Receivables* is a later decision of the Second Circuit), the court instead held that the New York district court lacked personal jurisdiction over DMS to enforce the subpoena:

Section 7 states that an arbitrator's summons "shall be served in the same manner as subpoenas to appear and testify before the court." 9 U.S.C. § 7. Section 7 also provides that the district court in the district in which the arbitrators are sitting may enforce such a summons by compelling attendance or punishing a non-attendee for contempt "in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." *Id.* Service of subpoenas to appear before the federal courts and enforcement of those subpoenas are in turn governed by Federal Rule of Civil Procedure 45. Rule 45(b)(2) permits a subpoena to be

> served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena

or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.

Fed.R.Civ.P. 45(b)(2). This is the default rule; however, "[w]hen a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place." *Id.* Not only is service of process geographically limited by Rule 45, but enforcement proceedings are too. Rule 45(e) further provides that failure to comply with a properly issued subpoena "may be deemed a contempt of the court from which the subpoena issued." Fed. R.Civ.P. 45(e). Ordinarily, in the case of a subpoena for the production of documents alone, that court would be "the court for the district where the production or inspection is to be made." Fed. R.Civ.P. 45(a)(2). Rule 37(a)(1) similarly provides that "[a]n application for an order [to compel discovery] to a person who is not a party shall be made to the court in the district where discovery is being, or is to be, taken." Fed.R.Civ.P. 37(a)(1). *Thus, the Federal Rules governing subpoenas to which Section 7 refers do not contemplate nationwide service of process or enforcement; instead, both service and enforcement proceedings have clear territorial limitations.*

In this case, the subpoena was issued not by a court, but by the arbitrators. It required DMS to produce documents in Houston and was served on DMS in Houston, presumably within 100 miles of where production was to take place. *Ordinarily, under Rule 45, such a subpoena would be issued by the District Court for the Southern District of Texas and could be enforced by that court. However, [Section 7] provides that subpoenas issued under that section may be enforced by petition to "the United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7. Here, the arbitrators were sitting in the Southern District of New York, so [Section 7] required that any enforcement action be brought there.*

*Appellees contend, and the district court found, that the foregoing analysis implies that the Southern District of New York must have jurisdiction over DMS to enforce the subpoena. However, the federal district courts do not generally have nationwide jurisdiction unless authorized by a federal statute.* Contrary to the district court's reading of the statute, nothing in the language of [Section 7] suggests that Congress intended to authorize nationwide service of process. In fact, the language of Section 7 specifically suggests that the ordinary rules applicable to the district courts apply by stating that subpoenas under the section "shall be served in the *same manner* as subpoenas to appear and testify before the court" and the district court may compel attendance "in the *same manner provided by law* for securing the attendance of witnesses ... in the courts of the United States." 9 U.S.C. § 7 (emphasis added).

"Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress failed to do so here argues forcefully that such authorization was not its intention." For example, when Congress intends to permit nationwide personal jurisdiction it uses language permitting service "wherever the defendant may be found" or "anywhere in the United States." ...

*Appellees argue that this holding will create the absurd result that [Section 7] authorizes the issuance of some subpoenas that cannot be enforced.* They ask us either to adopt the compromise position created in *Amgen, Inc. v. Kidney Center of Delaware County,* 879 F.Supp. 878, 882–83 (N.D.Ill.1995), where the district court enforced an arbitration subpoena against a distant non-party by permitting an attorney for a party to the arbitration to issue a subpoena that would be enforced by the district court in the district where the non-party resided, or to suggest another method to get around this gap in enforceability. We decline to do so. We see no textual basis in the FAA for the *Amgen* compromise. Indeed, we have already held that Section 7 "explicitly confers authority only upon *arbitrators;* by necessary implication, the *parties* to an arbitration may not employ this provision to subpoena documents or witnesses." *NBC v. Bear Stearns & Co.,* 165 F.3d 184, 187 (2d Cir.1999). Moreover, *we see no reason to come up with an alternate method to close a gap that may reflect an intentional choice on the part of Congress, which could well have desired to limit the issuance and enforcement of arbitration subpoenas in order to protect non-parties from having to participate in an arbitration to a greater extent than they would if the dispute had been filed in a court of law. The parties to the arbitration here chose to arbitrate in New York* even though the underlying contract and all of the activities giving rise to the arbitration had nothing to do with New York; they could easily have chosen to arbitrate in Texas, where DMS would have been subject to an arbitration subpoena and a Texas district court's enforcement of it. *Having made one choice for their own convenience, the parties should not be permit-ted to stretch the law beyond the text of Section 7 and Rule 45 to inconvenience witnesses. As we have recently stated, "[w]hile the [Act] expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the [Act] was to make arbitration agreements as enforceable as other contracts, but not more so."* JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 171 (2d Cir.2004) (citations, internal quotation marks, and emphasis omitted). DMS is not a party to the contract, and not even the strong federal policy favoring arbitration can lead to jurisdiction over a non-party without some basis in federal law.

*Id.* at 94–96 (some emphases added; footnote and some citations omitted; some alterations original). Thus, even if an independent basis for federal subject matter jurisdiction exists, a Section 7 district court's lack of personal jurisdiction over the subpoenaed nonparty may also bar enforcement of the arbitration panel's nonparty subpoena.

### Trial Rule 28(E)

Once Monsanto obtained the revised subpoena from the New York arbitration panel, it filed in the Hamilton Superior Court a petition to assist pursuant to Indiana Trial Rule 28(E). That rule states as follows:

**Assistance to tribunals and litigants outside this state.** A court of this state may order a person who is domiciled or is found within this state to give his testimony or statement or to produce documents or other things, allow inspections and copies and permit physical and mental examinations for use in a proceeding in a tribunal outside this state. The order may be made upon the application of any interested person or in response to a letter rogatory and may

prescribe the practice and procedure, which may be wholly or in part the practice and procedure of the tribunal outside this state, for taking the testimony or statement or producing the documents or other things. To the extent that the order does not prescribe otherwise, the practice and procedure shall be in accordance with that of the court of this state issuing the order. The order may direct that the testimony or statement be given, or document or other thing produced, before a person appointed by the court. The person appointed shall have power to administer any necessary oath. A person within this state may voluntarily give his testimony or statement or produce documents or other things allowing inspections and copies and permit physical and mental examinations for use in a proceeding before a tribunal outside this state.

Ind. Trial Rule 28(E).

■ This court recently discussed the scope of that rule:

Generally stated, Indiana Trial Rule 28(E) allows Indiana courts to assist tribunals and litigants outside this state by providing a mechanism to pursue discovery within Indiana's jurisdiction in a cause initiated outside Indiana's jurisdiction. As the discovery proceedings in Indiana aid the principal cause instituted outside of Indiana, proceedings under Indiana Trial Rule 28(E) are properly characterized as ancillary proceedings. *See Chapman v. Grimm & Grimm, P.C.,* 638 N.E.2d 462, 466 (Ind.Ct.App.1994) (where we defined ancillary proceedings

as attending upon or aiding a principal proceeding) . . . .

Furthermore, [jurisdiction obtained via Trial Rule 28(E) is] limited to providing assistance in discovery issues—ordering a person to give testimony or statement, or to produce documents or other things, allow inspections and copies and permit physical and mental examinations for use in a proceeding in a tribunal outside this state. Based on the unambiguous and narrow language of the Trial Rule, this jurisdiction does not expand to disputes over expert witness fees . . . .

*Dean v. Weaver,* 928 N.E.2d 254, 257 (Ind. Ct.App.2010), *trans. denied.* In other words, Trial Rule 28(E) permits an out-of-state tribunal to obtain personal jurisdiction over an Indiana entity, where that tribunal otherwise would not have had jurisdiction over it, for the limited purpose of receiving assistance in discovery issues from the Indiana entity.

### *Preemption Analysis*

■ With that background, we turn to the merits of Beck's claim that Section 7 preempts the trial court's Rule 28(E) order. The central question in this appeal is whether Section 7's language that Monsanto must petition a federal district court for enforcement of the subpoena is a clear reflection of congressional intent and whether Monsanto's use of Trial Rule 28(E) frustrates that intent.[6] As discussed in more detail below, we hold that Section 7 is clear as written. Pursuant to its plain terms, Congress requires the enforcement of an arbitration panel's nonparty subpoena to be brought in the federal forum. 9

---

**6.** We note that the language of Section 7, standing alone, does not necessitate an independent basis for federal jurisdiction to bring a petition for the enforcement of an arbitration panel's nonparty subpoena in the federal district courts. That authority is found in

case law, including case law from the Supreme Court and the Second Circuit. *See Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852; *Stolt–Nielsen,* 430 F.3d at 572.

U.S.C. § 7. This limited federal jurisdiction for enforcement is a reflection of Congress' desire to keep arbitration simple and efficient, "to protect non-parties from having to participate in an arbitration to a greater extent than they would if the dispute had been filed in a court of law," and not to burden state courts with incidental enforcement procedures. *See Dynegy*, 451 F.3d at 96. As such, the attempt to use an Indiana trial rule when a federal forum is unavailable frustrates Congress' intent to limit these petitions to the federal courts.

Indeed, the only reason why Monsanto petitioned an Indiana trial court in the first place is because Monsanto cannot avail itself of relief from a federal court. *See Stolt–Nielsen*, 430 F.3d at 572; *Amgen*, 95 F.3d at 567. Both Monsanto and DuPont are Delaware corporations—and therefore Monsanto lacks federal diversity jurisdiction—and the dispute between them does not arise under the laws of the United States. As Beck's states in its appellate brief:

> Monsanto laments that the district court in the Southern District of New York has no jurisdiction over [Monsanto and DuPont] (or Beck's for that matter), but the fact remains that New York is the forum in which Monsanto and [DuPont] freely and voluntarily chose to arbitrate. If it was licensing seed technology that was to be marketed and sold nationwide ..., then Monsanto should not have agreed to arbitrate in New York, petitioned for the issuance of subpoenas under Section 7, and limited itself to the jurisdiction and subpoena power of the United States District Court for the Southern District of New York.

Appellant's Br. at 19.

Applying the plain text of Section 7, and the federal case law interpreting it, to these facts is straightforward. Again, "[a]n arbitrator's authority over parties that are not contractually bound by the arbitration agreement is strictly limited to that granted by the Federal Arbitration Act." *Hay Group*, 360 F.3d at 406. That is, Section 7 defines and limits the manner in which an arbitration panel's nonparty subpoena can be enforced. As the Second Circuit has explained, Monsanto "is limited to section 7 as a vehicle to enforce the subpoena.... [T]hose relying on section 7 ... must do so according to its plain text." *Life Receivables*, 549 F.3d at 218. Thus, the entire basis for authority to enforce an arbitration panel's nonparty subpoena flows from Section 7.

Section 7 requires an arbitration panel's nonparty subpoena to be enforced by "the United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7. The arbitration panel, or a majority of its members, is and will be sitting in New York City. Accordingly, if Monsanto needed to enforce the nonparty subpoena, then, by the plain text of Section 7, it needed to do so in the United States District Court for the Southern District of New York. Monsanto may not circumvent the express procedure outlined by Congress by ignoring Section 7 and instead applying for a Trial Rule 28(E) petition to assist in an Indiana trial court simply because Monsanto lacks federal jurisdiction under Section 7. *See Dynegy*, 451 F.3d at 94–96. That Monsanto lacked an independent basis for federal subject matter jurisdiction is not Beck's problem. Monsanto agreed to arbitration, and it is the party chargeable with any negative results associated with that choice. Monsanto's self-inflicted wounds do not give this court cause to ignore the plain text of Section 7.[7]

---

7. If the only problem facing Monsanto was    the district court's lack of personal jurisdic-

Nonetheless, Monsanto proffers an alternative, albeit convoluted, interpretation of Section 7 in its attempt to establish that it was proper to ask the Indiana trial court to enforce the arbitration panel's subpoena. To paraphrase, Monsanto contends that the arbitration panel agreed to "sit" in Indiana for purposes of the preliminary hearing, that the district court for the Southern District of Indiana was therefore the proper federal forum, and, since Section 7 does not grant the federal courts exclusive jurisdiction, that means that an Indiana court was competent to enforce the subpoena. We cannot agree with Monsanto's underlying assumption that there is anything ambiguous about Section 7 that requires our interpretation. *See* Ind.Code § 1–1–4–1; *see also Zanders v. State*, 800 N.E.2d 942, 944 (Ind.Ct.App. 2003) ("we do not interpret a statute that is facially clear and unambiguous."). But even assuming for the sake of argument that some part of Section 7 is open to interpretation, we still do not agree with any of the three false steps Monsanto takes to reach its desired conclusion.

First, Monsanto asserts that the single arbitrator will be sitting in Atlanta, Indiana, and, therefore, Section 7 defines the relevant federal district as the Southern District of Indiana. Section 7 refers to where the "arbitrators, *or a majority of them,* are sitting." 9 U.S.C. § 7 (emphasis added). As such, Monsanto equates "arbitrators" with "a single arbitrator." But elsewhere the statute states that "[t]he arbitrators … may summon in writing any person to attend before them *or any of them* …." *Id.* (emphasis added). If "arbitrators" means any one arbitrator,

then Congress did not need to specify "or any of them." Likewise, the language "or a majority of them" is surplusage since the location of a majority necessarily includes the locations of the individuals.

We are bound to construe a statute in a manner that renders all of its language relevant and not surplusage. *See Hillebrand v. Supervised Estate of Large*, 914 N.E.2d 846, 848 (Ind.Ct.App.2009). As such, the language, "such arbitrators, or a majority of them," must mean "the arbitration panel, or a majority of its members." That interpretation renders the whole of the text relevant: you can have all of the arbitrators present, but you must have a majority of them. Here, "a majority of" the arbitrators will never leave New York City[8]; only a single arbitrator will hold the hearing in Indiana. Thus, the only proper federal forum is the Southern District of New York.

Second, if Monsanto is correct in its interpretation of the statute, then the proper court to enforce the arbitration panel's nonparty subpoena is not the New York district court but the district court for the Southern District of Indiana, which has jurisdiction over Atlanta, Indiana. The suggestion that a district court in a district other than the district in which the arbitration panel is sitting could be the proper court under Section 7 was squarely rejected by the Second Circuit:

> Ordinarily, under [Federal Rule of Civil Procedure] 45, such a subpoena would be issued by the District Court for the Southern District of Texas and could be enforced by that court. However, [Section 7] provides that subpoenas issued

---

tion over Beck's, rather than Monsanto's lack of subject matter jurisdiction to petition the federal court in the first place, we would agree with Monsanto that Trial Rule 28(E) could be used to obtain personal jurisdiction over Beck's in this matter. *See* T.R. 28(E).

8. Presumably, the majority must stay in New York City pursuant to the forum selection clause of the Monsanto–DuPont agreements.

under that section may be enforced by petition to "the United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7. Here, the arbitrators were sitting in the Southern District of New York, so [Section 7] required that any enforcement action be brought there.

*Dynegy,* 451 F.3d at 95. And if the United States District Court for the Southern District of Indiana does not have jurisdiction, there is no sound rationale why the Hamilton Superior Court should have jurisdiction over the enforcement of the New York arbitration panel's subpoena.

Monsanto suggests that *Dynegy* is inapposite because that case involved a documents-only subpoena, not a subpoena for a nonparty's participation in a pre-merits evidentiary hearing before a single arbitrator. *See* Appellees' Br. at 19. But the Second Circuit's holding was that the New York district court lacked personal jurisdiction over a Texas entity. *Dynegy,* 451 F.3d at 94–96. It is unclear from Monsanto's purported distinction how the nature of the district court's order could matter to the court's jurisdiction—the New York district court cannot acquire personal jurisdiction over a Texas entity simply because a single arbitrator is willing to travel from New York to Texas. As such, we are not persuaded by Monsanto's suggestion that *Dynegy* is inapposite.

Third, and indulging Monsanto's analysis one step further to assume that the Southern District of Indiana is the proper federal district under Section 7, Monsanto still did not ask the district court to enforce the subpoena. Instead, Monsanto asked an Indiana trial court to do so. In defense of that decision, Monsanto states that "there is nothing in the statutory language [of Section 7] that supports the conclusion that federal courts are the *ex-*

*clusive* forum to issue orders under [that] section[ ]." Appellees' Br. at 28. Monsanto also contends that "permitting state courts to enforce Section 7 . . . is entirely consistent" with precedent that state courts are competent to enforce arbitration agreements and other provisions of the Act. *Id.* at 28–29.

■ It is true that, "where there is not exclusive federal jurisdiction . . ., the state and federal courts have concurrent jurisdiction." *Jaskolski v. Daniels,* 905 N.E.2d 1, 12 (Ind.Ct.App.2009), *trans. denied, cert. denied,* —— U.S. ——, 130 S.Ct. 2098, 176 L.Ed.2d 724 (2010). In *Jaskolski,* we considered the jurisdiction of the state and federal courts under the Westfall Act, 28 U.S.C. § 2679. In relevant part, we distinguished the Westfall Act's use of the generic phrase "the court" from the specific phrase "the district court." *Jaskolski,* 905 N.E.2d at 12. We concluded that the former phrase meant either state or federal court while the latter phrase unambiguously meant only the federal forum. *Id.*

In other words, Congress knows what a United States district court is, and we will not redefine that expression here to mean "any court." *See Life Receivables,* 549 F.3d at 218 ("those relying on section 7 . . . must do so according to its plain text."); *see also Dynegy,* 451 F.3d at 95 ("Here, the arbitrators were sitting in the Southern District of New York, so [Section 7] required that any enforcement action be brought there."). Section 7 is unambiguous. It confers jurisdiction on only "the United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7.

Neither are we persuaded by the fact that state courts are competent to enforce the substantive provisions of the Act. For example, Section 2 of the Act states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court of the United States has held that, through the language of Section 2, "the Arbitration Act preempts a state law that withdraws the power to enforce arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). As such, state courts as well as federal courts are obliged to enforce arbitration agreements. *Id.* at 10–16, 104 S.Ct. 852. But the Court cautioned that its holding was not to be read to apply other, procedural provisions of the Act in state courts. *Id.* at 16 n. 10, 104 S.Ct. 852. Because the issue before us is not the enforcement of an agreement to arbitrate but, instead, merely the proper procedure to be used in enforcing an arbitration panel's subpoena to a nonparty, *Southland* is not binding authority in this case.

Section 4 of the Act is also routinely applied by state courts. *See* Appellees' Br. at 26–27 (citing cases). Section 4 states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Monsanto asserts that Section 4's language that a party "may petition any ... district court which ... would have jurisdiction under Title 28" is equivalent to Section 7's language that a party to arbitration, "upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attend-

ance" of a third-party. *See* 9 U.S.C. §§ 4, 7. But the language of Section 4 is not similar to the language of Section 7. Section 4 requires a court to interpret a contract, as a threshold matter, to determine if arbitration is required under the contract. 9 U.S.C. § 4. Such an interpretation is a substantive question of state law. *MPACT*, 802 N.E.2d at 904–05. As a substantive question, *Southland* acknowledges concurrent jurisdiction. 465 U.S. at 10–16, 104 S.Ct. 852. And since the question is one of state law in the first instance, of course the states have jurisdiction over those issues.

Section 7, on the other hand, requires no application of judicial power other than the mere enforcement of a subpoena. In exercising that authority, there is no risk that the federal judiciary will misapply the law of the states. Hence, it was quite sensible for Congress to expressly limit Section 7's authority to enforce an arbitration panel's nonparty subpoenas to "the United States district court[s]." 9 U.S.C. § 7. Section 7 reflects clear congressional intent to not burden the states with the enforcement of an arbitration panel's nonparty subpoena. It is no accident that in the sixty-three years since the enactment of Section 7 there has not been a single reported appellate case where a state court has been involved in an enforcement action under that law.

Finally, at oral argument counsel for Monsanto emphasized that the authority to issue the nonparty subpoena implies the power to enforce it somewhere. That is not so. As the Second Circuit stated:

> Appellees contend, and the district court found, that the foregoing analysis implies that the Southern District of New York must have jurisdiction over DMS to enforce the subpoena. However, the federal district courts do not generally have nationwide jurisdiction

unless authorized by a federal statute. Contrary to the district court's reading of the statute, nothing in the language of [Section 7] suggests that Congress intended to authorize nationwide service of process....

....

... Moreover, we see no reason to come up with an alternate method to close a gap that may reflect an intentional choice on the part of Congress, which could well have desired to limit the issuance and enforcement of arbitration subpoenas *in order to protect non-parties from having to participate in an arbitration to a greater extent than they would if the dispute had been filed in a court of law.* The parties to the arbitration here chose to arbitrate in New York.... Having made one choice for their own convenience, the parties should not be permitted to stretch the law beyond the text of Section 7 and Rule 45 to inconvenience witnesses.

*Dynegy,* 451 F.3d at 95–96 (emphasis added). Further, Judge Alito's opinion powerfully rejected a similar "power-by-implication" analysis under the Act:

> Some courts have argued that the language of Section 7 implies the power to issue [documents-only] pre-hearing subpoenas....
>
> We disagree with this power-by-implication analysis. By conferring the power to compel a non-party witness to bring items to an arbitration proceeding while saying nothing about the power simply to compel the production of items without summoning the custodian to testify, the [Act] implicitly withholds the latter power. If the [Act] had been meant to confer the latter, broader power, we believe that the drafters would have said so, and they would have then had no need to spell out the more limited power to compel a non-party witness

to bring items with him to an arbitration proceeding.

*Hay Group,* 360 F.3d at 408–09.

■ The operation and effect of Monsanto's arguments is to confer nationwide jurisdiction on an arbitration panel, since parties to arbitration could ask any state court to enforce the panel's nonparty subpoenas to appear before a single, traveling arbitrator. This is a fatal flaw. Again, the Act "does not authorize nationwide service of process," and "the federal district courts do not generally have nationwide jurisdiction unless authorized by a federal statute." *Dynegy,* 451 F.3d at 90, 95. And the Act does not grant greater authority to arbitration panels than it does to the United States district courts. *See id.* at 96. Thus, it would violate and conflict with congressional intent to expand enforcement jurisdiction to include the state courts, wherever they may be located. Nothing in the text of Section 7 suggests that Congress meant to authorize the courts of the fifty states to enforce the arbitration subpoena provisions of that statute. And without congressional authorization, a state statute or rule can neither restrict nor expand the operation and effect of a federal statute. To hold otherwise would stand the Supremacy Clause on its head.

### Conclusion

In sum, Monsanto's use of Trial Rule 28(E) conflicts with Section 7's purposes and objectives. *See Florian,* 930 N.E.2d at 1195–96. The plain language of Section 7 establishes a specific procedure for the enforcement of an arbitration panel's subpoena to a nonparty: the party seeking compliance must "petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting," and that court then "may compel the attendance of such person or persons before said arbitrator or

arbitrators." 9 U.S.C. § 7. The text of the law is the beginning and the end of our analysis. While that language may in some cases, such as this one, create a "gap in enforceability," federal case law persuasively demonstrates that such "gaps" were an intentional policy choice by Congress. *See Dynegy*, 451 F.3d at 94–96. Monsanto may not use an Indiana trial rule to circumvent the jurisdictional and territorial limitations intended by Congress. Accordingly, the trial rule must yield to the federal statute.

We hold that, by its plain language and upon the facts before us, Section 7 of the Act preempts Trial Rule 28(E). Thus, the trial court erred in entering judgment for Monsanto on Monsanto's Trial Rule 28(E) petition to assist. We reverse that judgment and remand with instructions that the trial court dismiss Monsanto's petition.

Reversed and remanded with instructions.

MATHIAS, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent. I agree that if there were federal court jurisdiction over these parties, then Congress intended the federal district courts to be the exclusive venue in which an arbitrator's subpoena may be enforced. But I simply cannot conclude that where, as here, there is no federal court jurisdiction, Congress intended to tie the hands of the arbitrators and the States in this fashion. If there is no federal court jurisdiction, then this is simply an intra-state dispute.

Indiana has elected to pass a trial rule that enshrines the rule of comity as part of our body of law. Trial Rule 28(E) "allows Indiana courts to assist tribunals and litigants outside this state by providing a mechanism to pursue discovery within

Indiana's jurisdiction in a cause initiated outside Indiana's jurisdiction." *Dean v. Weaver*, 928 N.E.2d 254, 257 (Ind.Ct.App. 2010), *trans. denied.* In other words, Indiana has made it a priority to cooperate with—and aid, when possible—the tribunals of our sister states and of the federal government in discovery disputes.

The majority opines that "[t]he operation and effect of Monsanto's arguments is to confer nationwide jurisdiction on an arbitration panel," op. p. 367, but I cannot agree. Only when there is no federal court jurisdiction over the arbitration such that federal courts cannot step in to aid the arbitrators, and only in those states that have enacted something analogous to Indiana's Trial Rule 28(E), would the arbitration panel have the ability to enforce its nonparty subpoenas. I simply cannot conclude that Congress intended to prevent states that have chosen to make the rule of comity a legislative priority from applying that policy when there is no federal court jurisdiction over the matter.

To put it another way, if there were ongoing litigation in a Minnesota state court and our sister tribunal needed help enforcing a subpoena over an Indiana resident, an Indiana trial court could and would step in, pursuant to Rule 28(E). But the result reached by the majority herein means that we could not offer that same help to a sister arbitration panel, notwithstanding the fact that there is no federal court jurisdiction. I simply cannot conclude that Congress intended such a result.

Indeed, this interpretation of Section 7 means, essentially, that only the largest corporations, which engage in business in all fifty states, are without recourse. Whereas an entity that does not have a presence in all fifty states would be able to achieve diversity jurisdiction, and the arbitrators in such a scenario would be able to enforce nonparty subpoenas in the federal

district courts, a large entity such as Monsanto has no such option. Congress could not have intended to treat large and small corporations so disparately. Consequently, I read the language of Section 7—which, notwithstanding the majority's representation, does *not* say "*only* 'the United States district court for the district in which such arbitrators, or a majority of them, are sitting,'" op. p. 365 (quoting 9 U.S.C. § 7) (emphasis added)—to be in the nature of venue direction, rather than venue preemption.

In other words, when there is federal court jurisdiction, the arbitrators are directed to a federal district court. But when there is no federal court jurisdiction, it obviously makes no sense to direct the arbitrators to a federal court, so the issue is left to the individual states to handle. As noted above, Indiana has decided to aid sister tribunals in matters of discovery enforcement. Consequently, I believe that the trial court herein had every right to order Beck's to comply with the subpoena, and I would affirm.